# JONES *v.* UNITED STATES.

No. 69.   Argued January 21, 1960.—Decided March 28, 1960.

*Louis Henkin* argued the cause for petitioner. With him on the brief was *Herbert S. Marks.*

*James W. Knapp* argued the cause for the United States. On the brief were *Solicitor General Rankin, Assistant Attorney General Wilkey, Robert S. Erdahl* and *Philip R. Monahan.*

MR. JUSTICE FRANKFURTER delivered the opinion of the Court.

This is a prosecution for violation of federal narcotics laws. In the first count of a two-count indictment petitioner was charged with having "purchased, sold, dispensed and distributed" narcotics in violation of 26 U. S. C. § 4704 (a), that is, not in or from the "original stamped package." In the second count petitioner was charged under 21 U. S. C. § 174 with having "facilitated the concealment and sale of" the same narcotics, knowing them to have been imported illegally into the United States. Petitioner was found guilty on both counts and sentenced to seven years' imprisonment. The Court of Appeals, one judge dissenting, affirmed the conviction. 104 U. S. App. D. C. 345, 262 F. 2d 234. Since the case presented important questions in the administration of criminal justice, more particularly a defendant's standing to challenge the legality of a search in the circumstances of this case, as well as the legality of the particular search should standing be established, we granted certiorari. 359 U. S. 988.

Both statutory provisions under which petitioner was prosecuted permit conviction upon proof of the defendant's possession of narcotics, and in the case of 26 U. S. C. § 4704 (a) of the absence of the appropriate stamps. Possession was the basis of the Government's case against petitioner. The evidence against him may be briefly summarized. He was arrested in an apartment in the District of Columbia by federal narcotics officers, who

were executing a warrant to search for narcotics. Those officers found narcotics, without appropriate stamps, and narcotics paraphernalia in a bird's nest in an awning just outside a window in the apartment. Another officer, stationed outside the building, had a short time before seen petitioner put his hand on the awning. Upon the discovery of the narcotics and the paraphernalia petitioner had admitted to the officers that some of these were his and that he was living in the apartment.

Prior to trial petitioner duly moved to suppress the evidence obtained through the execution of the search warrant on the ground that the warrant had been issued without a showing of probable cause. The Government challenged petitioner's standing to make this motion because petitioner alleged neither ownership of the seized articles nor an interest in the apartment greater than that of an "invitee or guest." The District Court agreed to take evidence on the issue of petitioner's standing. Only petitioner gave evidence. On direct examination he testified that the apartment belonged to a friend, Evans, who had given him the use of it, and a key, with which petitioner had admitted himself on the day of the arrest. On cross-examination petitioner testified that he had a suit and shirt at the apartment, that his home was elsewhere, that he paid nothing for the use of the apartment, that Evans had let him use it "as a friend," that he had slept there "maybe a night," and that at the time of the search Evans had been away in Philadelphia for about five days.

Solely on the basis of petitioner's lack of standing to make it, the district judge denied petitioner's motion to suppress. When the case came on for trial before a different judge, the motion to suppress was renewed and was denied on the basis of the prior ruling. An unsuccessful objection was made when the seized items were offered in evidence at the trial.

In affirming petitioner's conviction the Court of Appeals agreed with the District Court that petitioner lacked standing, but proceeded to rule that even if it were to find that petitioner had standing, it would hold the evidence to have been lawfully received. A challenge to the search which petitioner had not made in the District Court, namely, that the method of executing the warrant had been illegal, was considered by the Court of Appeals and rejected, while the contention petitioner had made below, that there had been insufficient cause to issue the warrant, was rejected without discussion.

The issue of petitioner's standing is to be decided with reference to Rule 41 (e) of the Federal Rules of Criminal Procedure. This is a statutory direction governing the suppression of evidence acquired in violation of the conditions validating a search. It is desirable to set forth the Rule.

"A person aggrieved by an unlawful search and seizure may move the district court for the district in which the property was seized for the return of the property and to suppress for use as evidence anything so obtained on the ground that (1) the property was illegally seized without warrant, or (2) the warrant is insufficient on its face, or (3) the property seized is not that described in the warrant, or (4) there was not probable cause for believing the existence of the grounds on which the warrant was issued, or (5) the warrant was illegally executed. The judge shall receive evidence on any issue of fact necessary to the decision of the motion. If the motion is granted the property shall be restored unless otherwise subject to lawful detention and it shall not be admissible in evidence at any hearing or trial. The motion to suppress evidence may also be made in the district where the trial is to be had. The motion shall be made before trial or hearing unless opportunity

therefor did not exist or the defendant was not aware of the grounds for the motion, but the court in its discretion may entertain the motion at the trial or hearing."

In order to qualify as a "person aggrieved by an unlawful search and seizure" one must have been a victim of a search or seizure, one against whom the search was directed, as distinguished from one who claims prejudice only through the use of evidence gathered as a consequence of a search or seizure directed at someone else. Rule 41 (e) applies the general principle that a party will not be heard to claim a constitutional protection unless he "belongs to the class for whose sake the constitutional protection is given." *Hatch* v. *Reardon,* 204 U. S. 152, 160. The restrictions upon searches and seizures were obviously designed for protection against official invasion of privacy and the security of property. They are not exclusionary provisions against the admission of kinds of evidence deemed inherently unreliable or prejudicial. The exclusion in federal trials of evidence otherwise competent but gathered by federal officials in violation of the Fourth Amendment is a means for making effective the protection of privacy.

Ordinarily, then, it is entirely proper to require of one who seeks to challenge the legality of a search as the basis for suppressing relevant evidence that he allege, and if the allegation be disputed that he establish, that he himself was the victim of an invasion of privacy. But prosecutions like this one have presented a special problem. To establish "standing," Courts of Appeals have generally required that the movant claim either to have owned or possessed the seized property or to have had a substantial possessory interest in the premises searched. Since narcotics charges like those in the present indictment may be established through proof solely of possession of narcotics, a defendant seeking to comply with what has

been the conventional standing requirement has been forced to allege facts the proof of which would tend, if indeed not be sufficient, to convict him. At the least, such a defendant has been placed in the criminally tendentious position of explaining his possession of the premises. He has been faced, not only with the chance that the allegations made on the motion to suppress may be used against him at the trial, although that they may is by no means an inevitable holding, but also with the encouragement that he perjure himself if he seeks to establish "standing" while maintaining a defense to the charge of possession.

The dilemma that has thus been created for defendants in cases like this has been pointedly put by Judge Learned Hand:

> "Men may wince at admitting that they were the owners, or in possession, of contraband property; may wish at once to secure the remedies of a possessor, and avoid the perils of the part; but equivocation will not serve. If they come as victims, they must take on that role, with enough detail to cast them without question. The petitioners at bar shrank from that predicament; but they were obliged to choose one horn of the dilemma." *Connolly* v. *Medalie*, 58 F. 2d 629, 630.

Following this holding, several Courts of Appeals have pinioned a defendant within this dilemma. See, *e. g.*, *Scoggins* v. *United States*, 92 U. S. App. D. C. 29–30, 202 F. 2d 211, 212; *United States* v. *Eversole*, 209 F. 2d 766, 768; *Accardo* v. *United States*, 101 U. S. App. D. C. 162, 163–164, 247 F. 2d 568, 569–570; *Grainger* v. *United States*, 158 F. 2d 236. A District Court has held otherwise. *United States* v. *Dean*, 50 F. 2d 905, 906 (D. C. Mass.). The Government urges us to follow the body of Court of Appeals' decisions and to rule that the lower

courts, including the courts below, have been right in barring a defendant in a case like this from challenging a search because of his failure, when making his motion to suppress, to allege either that he owned or possessed the property seized or that he had a possessory interest in the premises searched greater than the interest of an "invitee or guest."

Judge Hand's dilemma is not inescapable. It presupposes requirements of "standing" which we do not find compelling. Two separate lines of thought effectively sustain defendant's standing in this case. (1) The same element in this prosecution which has caused a dilemma, *i. e.,* that possession both convicts and confers standing, eliminates any necessity for a preliminary showing of an interest in the premises searched or the property seized, which ordinarily is required when standing is challenged. (2) Even were this not a prosecution turning on illicit possession, the legally requisite interest in the premises was here satisfied, for it need not be as extensive a property interest as was required by the courts below.

As to the first ground, we are persuaded by this consideration: to hold to the contrary, that is, to hold that petitioner's failure to acknowledge interest in the narcotics or the premises prevented his attack upon the search, would be to permit the Government to have the advantage of contradictory positions as a basis for conviction. Petitioner's conviction flows from his possession of the narcotics at the time of the search. Yet the fruits of that search, upon which the conviction depends, were admitted into evidence on the ground that petitioner did not have possession of the narcotics at that time. The prosecution here thus subjected the defendant to the penalties meted out to one in lawless possession while refusing him the remedies designed for one in that situation. It is not consonant with the amenities, to put it mildly, of the administration of criminal justice to sanction

such squarely contradictory assertions of power by the Government. The possession on the basis of which petitioner is to be and was convicted suffices to give him standing under any fair and rational conception of the requirements of Rule 41 (e).

The Government's argument to the contrary essentially invokes *elegantia juris*. In the interest of normal procedural orderliness, a motion to suppress, under Rule 41 (e),.must be made prior to trial, if the defendant then has knowledge of the grounds on which to base the motion. The Government argues that the defendant therefore must establish his standing to suppress the evidence at that time through affirmative allegations and may not wait to rest standing upon the Government's case at the trial. This provision of Rule 41 (e), requiring the motion to suppress to be made before trial, is a crystallization of decisions of this Court requiring that procedure, and is designed to eliminate from the trial disputes over police conduct not immediately relevant to the question of guilt. See *Nardone* v. *United States,* 308 U. S. 338, 341–342; *Segurola* v. *United States,* 275 U. S. 106, 111–112; *Agnello* v. *United States,* 269 U. S. 20, 34; *Adams* v. *New York,* 192 U. S. 585. As codified, the rule is not a rigid one, for under Rule 41 (e)· "the court in its discretion may entertain the motion [to suppress] at the trial or hearing." This qualification proves that we are dealing with carrying out an important social policy and not a narrow, finicky procedural requirement. This underlying policy likewise precludes application of the Rule so as to compel the injustice of an internally inconsistent conviction. In cases where the indictment itself charges possession, the defendant in a very real sense is revealed as a "person aggrieved by an unlawful search and seizure" upon a motion to suppress evidence prior to trial. Rule 41 (e) should not be applied to allow the Government to deprive the defendant of standing to bring a motion

to suppress by framing the indictment in general terms, while prosecuting for possession.[1]

As a second ground sustaining "standing" here we hold that petitioner's testimony on the motion to suppress made out a sufficient interest in the premises to establish him as a "person aggrieved" by their search. That testimony established that at the time of the search petitioner was present in the apartment with the permission of Evans, whose apartment it was. The Government asserts that such an interest is insufficient to give standing. The Government does not contend that only ownership of the premises may confer standing. It would draw distinctions among various classes of possessors, deeming some, such as "guests" and "invitees" with only the "use" of the premises, to have too "tenuous" an interest although concededly having "some measure of control" through their "temporary presence," while conceding that others, who in a "realistic sense, have dominion of the apartment" or who are "domiciled" there, have standing. Petitioner, it is insisted, by his own testimony falls in the former class.

While this Court has never passed upon the interest in the searched premises necessary to maintain a motion to suppress, the Government's argument closely follows the prevailing view in the lower courts. They have denied standing to "guests" and "invitees" (*e. g., Gaskins* v. *United States,* 95 U. S. App. D. C. 34, 35, 218 F. 2d 47, 48; *Gibson* v. *United States,* 80 U. S. App. D. C. 81, 84, 149 F. 2d 381, 384; *In re Nassetta,* 125 F. 2d 924; *Jones* v. *United States,* 104 U. S. App. D. C. 345, 262 F. 2d 234),

---

[1] Ordinarily the Government should choose between opposing a motion to suppress made before trial and basing the case upon possession, but if necessary the District Court's discretion to hear the motion to suppress during trial may be invoked. The Government must, in any case, not permit a conviction to be obtained on the basis of possession, without the merits of a duly made motion to suppress having been considered.

and employees, who though in "control" or "occupancy" lacked "possession" (e. g., *Connolly* v. *Medalie,* 58 F. 2d 629, 630; *United States* v. *Conoscente,* 63 F. 2d 811). The necessary quantum of interest has been distinguished as being, variously, "ownership in or right to possession of the premises" (e. g., *Jeffers* v. *United States,* 88 U. S. App. D. C. 58, 61, 187 F. 2d 498, 501, affirmed, *Jeffers* v. *United States,* 342 U. S. 48), the interest of a "lessee or licensee" (*United States* v. *De Bousi,* 32 F. 2d 902), or of one with "dominion" (*McMillan* v. *United States,* 26 F. 2d 58, 60; *Steeber* v. *United States,* 198 F. 2d 615, 617). We do not lightly depart from this course of decisions by the lower courts. We are persuaded, however, that it is unnecessary and ill-advised to import into the law surrounding the constitutional right to be free from unreasonable searches and seizures subtle distinctions, developed and refined by the common law in evolving the body of private property law which, more than almost any other branch of law, has been shaped by distinctions whose validity is largely historical. Even in the area from which they derive, due consideration has led to the discarding of these distinctions in the homeland of the common law. See Occupiers' Liability Act, 1957, 5 and 6 Eliz. 2, c. 31, carrying out Law Reform Committee, Third Report, Cmd. 9305. Distinctions such as those between "lessee," "licensee," "invitee" and "guest," often only of gossamer strength, ought not to be determinative in fashioning procedures ultimately referable to constitutional safeguards.

We rejected such distinctions as inappropriate to the law of maritime torts in *Kermarec* v. *Compagnie Generale,* 358 U. S. 625, 630–632. We found there to be a duty of ordinary care to one rightfully on the ship, regardless of whether he was a "licensee" rather than an "invitee." "For the admiralty law at this late date to import such conceptual distinctions would be foreign to its traditions

of simplicity and practicality." 358 U. S., at 631. *A fortiori* we ought not to bow to them in the fair administration of the criminal law. To do so would not comport with our justly proud claim of the procedural protections accorded to those charged with crime. No just interest of the Government in the effective and rigorous enforcement of the criminal law will be hampered by recognizing that anyone legitimately on premises where a search occurs may challenge its legality by way of a motion to suppress, when its fruits are proposed to be used against him. This would of course not avail those who, by virtue of their wrongful presence, cannot invoke the privacy of the premises searched. As petitioner's testimony established Evans' consent to his presence in the apartment, he was entitled to have the merits of his motion to suppress adjudicated.

We come to consider the grounds upon which the search is alleged to have been illegal. The attack which was made in the District Court was one of lack of probable cause for issuing the search warrant. The question raised is whether sufficient evidence to establish probable cause to search was put before the Commissioner by the officer, Didone, who applied for the warrant. The sole evidence upon which the warrant was issued was an affidavit signed by Didone. Both parties urge us to decide the question here, without remanding it to the District Court which, because it found lack of standing, did not pass on it. We think it appropriate to decide the question.

The affidavit is set out in the margin.[2] Didone was a member of the Narcotic Squad in the District of Columbia.

---

[2] "Affidavit in Support of a U. S. Commissioners Search Warrant for Premises 1436 Meridian Place, N. W., Washington, D. C., apartment 36, including window spaces of said apartment. Occupied by Cecil Jones and Earline Richardson.

"In the late afternoon of Tuesday, August 20, 1957, I, Detective Thomas Didone, Jr. received information that Cecil Jones and Earline

His affidavit claimed no direct knowledge of the presence of narcotics in the apartment. He swore that on the day before making the affidavit he had been given information, by one unnamed, that petitioner and another "were involved in the illicit narcotic traffic" and "kept a ready supply of heroin on hand" in the apartment. He swore that his informant claimed to have purchased narcotics at the apartment from petitioner and another "on many occasions," the last of which had been the day before the warrant was applied for. Didone swore that his informant "has given information to the undersigned on previous occasion and which was correct," that "[t]his same

Richardson were involved in the illicit narcotic traffic and that they kept a ready supply of heroin on hand in the above mentioned apartment. The source of information also relates that the two aforementioned persons kept these same narcotics either on their person, under a pillow, on a dresser or on a window ledge in said apartment. The source of information goes on to relate that on many occasions the source of information has gone to said apartment and purchased narcotic drugs from the above mentioned persons and that the narcotics were secreated [sic] in the above mentioned places. The last time being August 20, 1957.

"Both the aforementioned persons are familiar to the undersigned and other members of the Narcotic Squad. Both have admitted to the use of narcotic drugs and display needle marks as evidence of same.

"This same information, regarding the illicit narcotic traffic, conducted by Cecil Jones and Earline Richardson, has been given to the undersigned and to other officers of the narcotic squad by other sources of information.

"Because the source of information mentioned in the opening paragraph has given information to the undersigned on previous occasion and which was correct, and because this same information is given by other sources does believe that there is now illicit narcotic drugs being secreated [sic] in the above apartment by Cecil Jones and Earline Richardson.

"Det. Thomas Didone, Jr., Narcotic Squad, M.P.D.C.

"Subscribed and sworn to before me this 21 day of August, 1957.
"James F. Splain, U. S. Commissioner, D. C."

information" regarding petitioner had been given the narcotic squad by "other sources of information" and that the petitioner and the other implicated by the informant had admitted being users of narcotics. On this basis Didone founded his oath that he believed "that there is now illicit narcotic drugs being secreated [*sic*] in the above apartment by Cecil Jones."

This affidavit was, it is claimed, insufficient to establish probable cause because it did not set forth the affiant's personal observations regarding the presence of narcotics in the apartment, but rested wholly on hearsay. We held in *Nathanson* v. *United States,* 290 U. S. 41, that an affidavit does not establish probable cause which merely states the affiant's belief that there is cause to search, without stating facts upon which that belief is based. *A fortiori* this is true of an affidavit which states only the belief of one not the affiant. That is not, however, this case. The question here is whether an affidavit which sets out personal observations relating to the existence of cause to search is to be deemed insufficient by virtue of the fact that it sets out not the affiant's observations but those of another. An affidavit is not to be deemed insufficient on that score, so long as a substantial basis for crediting the hearsay is presented.

In testing the sufficiency of probable cause for an officer's action even without a warrant, we have held that he may rely upon information received through an informant, rather than upon his direct observations, so long as the informant's statement is reasonably corroborated by other matters within the officer's knowledge. *Draper* v. *United States,* 358 U. S. 307. We there upheld an arrest without a warrant solely upon an informant's statement that the defendant was peddling narcotics, as corroborated by the fact that the informant's description of the defendant's appearance, and of where he would be on a given morning (matters in themselves totally

innocuous) agreed with the officer's observations. We rejected the contention that an officer may act without a warrant only when his basis for acting would be competent evidence upon a trial to prove defendant's guilt. Quoting from *Brinegar* v. *United States,* 338 U. S. 160, 172, we said that such a contention "goes much too far in confusing and disregarding the difference between what is required to prove guilt in a criminal case and what is required to show probable cause for arrest or search. . . . There is a large difference between the two things to be proved [guilt and probable cause] . . . and therefore a like difference in the *quanta* and modes of proof required to establish them." 358 U. S., at 311–312. The dictum to the contrary in *Grau* v. *United States,* 287 U. S. 124, 128, was expressly rejected in *Draper.* 358 U. S., at 312, n. 4. See also Judge Learned Hand in *United States* v. *Heitner,* 149 F. 2d 105, 106.

What we have ruled in the case of an officer who acts without a warrant governs our decision here. If an officer may act upon probable cause without a warrant when the only incriminating evidence in his possession is hearsay, it would be incongruous to hold that such evidence presented in an affidavit is insufficient basis for a warrant. If evidence of a more judicially competent or persuasive character than would have justified an officer in acting on his own without a warrant must be presented when a warrant is sought, warrants could seldom legitimatize police conduct, and resort to them would ultimately be discouraged. Due regard for the safeguards governing arrests and searches counsels the contrary. In a doubtful case, when the officer does not have clearly convincing evidence of the immediate need to search, it is most important that resort be had to a warrant, so that the evidence in the possession of the police may be weighed by an independent judicial officer, whose decision, not that

of the police, may govern whether liberty or privacy is to be invaded.

We conclude therefore that hearsay may be the basis for a warrant. We cannot say that there was so little basis for accepting the hearsay here that the Commissioner acted improperly. The Commissioner need not have been convinced of the presence of narcotics in the apartment. He might have found the affidavit insufficient and withheld his warrant. But there was substantial basis for him to conclude that narcotics were probably present in the apartment, and that is sufficient. It is not suggested that the Commissioner doubted Didone's word. Thus we may assume that Didone had the day before been told, by one who claimed to have bought narcotics there, that petitioner was selling narcotics in the apartment. Had that been all, it might not have been enough; but Didone swore to a basis for accepting the informant's story. The informant had previously given accurate information. His story was corroborated by other sources of information. And petitioner was known by the police to be a user of narcotics. Corroboration through other sources of information reduced the chances of a reckless or prevaricating tale; that petitioner was a known user of narcotics made the charge against him much less subject to scepticism than would be such a charge against one without such a history.

Petitioner argues that the warrant was defective because Didone's informants were not produced, because his affidavit did not even state their names, and Didone did not undertake and swear to the results of his own independent investigation of the claims made by his informants. If the objections raised were that Didone had misrepresented to the Commissioner his basis for seeking a warrant, these matters might be relevant. Such a charge is not made. All we are here asked to decide is

whether the Commissioner acted properly, not whether Didone did. We have decided that, as hearsay alone does not render an affidavit insufficient, the Commissioner need not have required the informants or their affidavits to be produced, or that Didone have personally made inquiries about the apartment, so long as there was a substantial basis for crediting the hearsay.

In the Court of Appeals petitioner presented an additional attack upon the legality of the search, namely, that the warrant was not executed in conformity with 18 U. S. C. § 3109.[3] Since petitioner did not, with ample opportunity to do so, make this claim in the District Court, we should not ordinarily consider it here had the Court of Appeals refused for that reason to entertain it. The Court of Appeals, however, fully considered the claim and rejected it; nor does the Government contend that it is not properly before us. In these circumstances we hold that the question of the legality of the execution of the search warrant under 18 U. S. C. § 3109 is open for our decision.

Unlike the claim of lack of probable cause, this contention is not one which can satisfactorily be resolved upon the record before us. As *Miller* v. *United States,* 357 U. S. 301, demonstrated, a claim under 18 U. S. C. § 3109 depends upon the particular circumstances surrounding the execution of the warrant. The trial revealed a direct conflict in testimony on this matter. We cannot yield to the Government's suggestion that we ignore that conflict and consider the question on the version of the warrant's execution given at the trial most favorable to the prosecution. We therefore vacate the

---

[3] "The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant."

decision of the Court of Appeals and remand the case to the District Court to consider petitioner's contention under 18 U. S. C. § 3109, in light of our decision that petitioner had standing to make it.

*Vacated and remanded.*

Mr. Justice Douglas.

I join the part of the opinion which holds that petitioner had "standing" to challenge the legality of the search. But I dissent from the ruling that there was "probable cause" for issuance of the warrant. The view that there was "probable cause" finds some support in *Draper* v. *United States,* 358 U. S. 307. But my dissent in *Draper* gives, I think, the true dimensions of the problem. This is an age where faceless informers have been reintroduced into our society in alarming ways. Sometimes their anonymity is defended on the ground that revelation of their names would ruin counter-espionage or cripple an underground network of agents. Yet I think in these Fourth Amendment cases the duty of the magistrate is nondelegable. It is not sufficient that the police think there is cause for an invasion of the privacy of the home. The judicial officer must also be convinced; and to him the police must go except for emergency situations. The magistrate should know the evidence on which the police propose to act. Unless that is the requirement, unless the magistrate makes his independent judgment on all the known facts, then he tends to become merely the tool of police interests. Though the police are honest and their aims worthy, history shows they are not appropriate guardians of the privacy which the Fourth Amendment protects.