**UNITED STATES of America**

v.

**Clair CONWAY.**

**Crim. No. 62–116.**

United States District Court
D. Massachusetts.

May 23, 1962.

W. Arthur Garrity, U. S. Atty., Paul J. Redmond, Asst. U. S. Atty., for U. S.

Sheldon Newman, Samuel Leader, Chelsea, Mass., for Clair Conway.

WYZANSKI, District Judge.

This case is before me on defendant's motion, pursuant to Rule 41(e), to suppress evidence and an alleged confession.

D'Alessandro, a special agent of the Intelligence Division of the Internal Revenue Service on April 5, 1962 made before United States Commissioner (1) an application to search the premises of Leaders Grocery, 74 Second St., Chelsea, and (2) a complaint that Jane Doe had violated 26 U.S.C. §§ 4411, 4412, and 7203.

The application stated:

"I have reason to believe that there is presently being held in the same premises in which I placed wagers with a person or persons whose true and correct identity is unknown to me on or about February 1, 1962, April 3, 1962 and on other occasions, certain gambling materials, devices, equipment, and money, in violation of Title 26, U.S.Code, Sections 4401, 4411, 4412, and 7203. Said premises described as Leaders Grocery, 74 Second Street, Chelsea, Massachusetts, being the first floor of a three story wood frame building painted brown and black and having a pitched roof, and a sign which reads "Leaders Grocery".

Supporting both the application and complaint D'Alessandro offered (1) his affidavit and (2) the affidavit of Rose, another special agent.

D'Alessandro's affidavit stated:

"That Jane Doe, white female, 53–57 years of age, 5'7"–5'9", 145–155 pounds, medium build, light complexion, grey hair, wears glasses, did accept wagers from the complainant at Leaders Grocery, 74 Second Street, Chelsea, Massachusetts.

on or about February 1, 1962, April 3, 1962 and on other occasions and that the records of the District Director, Internal Revenue Service, Boston, Massachusetts as shown by the attached affidavit of Special Agent Frank E. Rose, failed to disclose that any person or persons has registered for the fiscal year beginning July 1, 1961 and ending June 30, 1962 as being engaged in the business of accepting wagers at the above described premises."

Rose's affidavit stated that his search of the tax records disclosed no record of the registration, or issuance of a special occupational tax stamp-wagering for any person at Leaders Grocery.

Commissioner Nelligan issued both (1) a warrant of arrest of Jane Doe and (2) a warrant to search Leaders Grocery for paraphernalia commonly used in the business of accepting wagers and said to be held in violation of 26 U.S.C. §§ 4401, 4411, 4412, and 7203.

The search warrant had in it this recital:

"Affidavit having been made before me by Special Agent Guido D. D'Alessandro that he has reason to believe that on the premises known as Leaders Grocery, 74 Second Street, Chelsea, Massachusetts, above described in the Judicial District of Massachusetts there is now being concealed certain property, namely books, records, papers, notebooks, pencils, memoranda sheets, racing forms (so called), money, and other paraphernalia commonly used in the business of accepting wagers, which are being held and possessed in violation of Title 26, U.S.Code, Sections 4401, 4411, 4412, and 7203 in that the special tax required by Section 4411 has not been paid for the fiscal year ending June 30, 1962."

Reavey, a regular deputy marshal, and McNally and Ginley, both special agents of the Intelligence Division of the Internal Revenue Service went to 74 Second St., Chelsea about 6 P.M. on April 5, 1962. Before their departure, with the telephoned consent of the Department of Justice, the United States Marshal the Honorable Robert Morey appointed McNally as a special deputy United States marshal.

When the trio arrived at 74 Second St., they found that no one was there and the premises were padlocked. Indeed the place was no longer a grocery store but was a daytime restaurant which had closed for the day.

McNally, who undertook the responsibility of executing the search warrant, demanded entrance. No one answering, Ginley procured a crowbar, and broke the lock, and all three entered. Later D'Alessandro joined them for five minutes.

Reavey and McNally searched for and found gambling paraphernalia. Before they had finished James Conway entered. In the presence of Reavey and Conway, McNally completed the inventory on the back of the search warrant. McNally swore to its accuracy and to the presence of Reavey and of Conway. McNally also gave a copy to Conway. The inventory listed these twelve categories of articles seized:

"A. 1 lot of various burned and torn number slips

B. 3 Ledger Books

C. $1.28 in cash

D. 15 3″ x 5″ Pads
9 new Pencils
3 Envelopes containing carbons for 3″ x 5″ pads

E. 1 3″ x 5″ pad with carbon inserted and dated 4/6

F. 1 Dream Book and 6 Lucky Number Cards

G. 8 Printed pages of Dream Book and 1 Electronic Brain publication

H. 1 Treasury Balance ticket

I. 2 Racing Publications

J. 3 Racing Publications

K. 4 Number Play tickets

L. Printed slip of Treasury Balance winning numbers"

About 7:20 P.M. Mrs. Conway, who was the Jane Doe named in the warrants, arrived. Reavey at once placed her under arrest. Reavey claims that he told Mrs. Conway she did not have to make any statement, and that anything she said might be used in evidence against her. McNally, who was in the room, which was only about 12 feet by 12 feet, did not hear this admonition, and I find that Mrs. Conway did not hear it.

Then McNally started to address questions to Mrs. Conway. He says he also gave her notice that she need not speak, and that what she said might be used against her. But the mimeographed form on which McNally recorded the purport of her answers does not refer to any admonition that either should be given or was in fact given to Mrs. Conway. I find that if Mrs. Conway was warned, she did not hear the warning, and did not, with full knowledge of her right to remain silent, consent to speak. On April 5 McNally wrote out the gist of her answers to his questions on the mimeographed. form. The next day he wrote an expanded account.

After both Mr. and Mrs. Conway had seen the seized articles, McNally and Reavey prepared to take Mrs. Conway to the Commissioner. At Mr. Conway's request they went in his car and arrived at about 8 P.M. at the Commissioner's. The seized articles are now in the custody of the Government, and seem to have been taken with the Conways to the Commissioner.

I turn from the findings of fact to questions of law.

■ First, I consider Mrs. Conway's statements. They were made while she was under arrest. In making them, she did not regard herself as free to refuse to answer. She did not realize her right under the Fifth Amendment not to incriminate herself. She responded solely because of the psychological pressure of the arrest to which she was then subject. Therefore, these statements, admissions, and confessions were given involuntarily. Cf. Judd v. United States, 89 U.S.App.D.C. 64, 190 F.2d 649, 651. Hence the second branch of the motion, seeking suppression of Mrs. Conway's statements, should be granted.

The more difficult question is whether the search warrant is valid.

On its face the warrant stated that gambling paraphernalia is being "held and possessed" in violation of 26 U.S.C. §§ 4401, 4411, 4412, and 7203, in that the special tax required by § 4411 has not been paid.

Despite what the warrant says, none of the sections just cited makes it a crime to hold or possess gambling paraphernalia. § 4401 imposes a tax on wagers to be paid by the person accepting them. § 4411 imposes an occupational tax on persons in the business of receiving wagers. § 4412 requires registration on persons in the occupation of accepting wagers. § 7203 provides that. any person, required to pay taxes on wagers or on the occupation of accepting wagers, who wilfully fails to pay such tax shall be guilty of a misdemeanor.

The anomalous wording of the warrant leads the defendant to argue that, according to its own text, the warrant. purports to search, not for articles *used* in connection with a crime, but for articles which are alleged themselves to be *held and possessed* as contraband; and that so construed, the warrant is invalid first because it is based on a mistake of law, and second because the affidavits upon which the warrant was issued do not recite that the affiants observed any of the articles described in the warrant.

The Government cannot meet the argument directly, but seeks to do so obliquely. It urges that the search warrant, though inexact in its wording, was issued to search for articles (that is gambling paraphernalia) used and in that sense "held" in connection with Jane Doe's crimes of wilfully evading the taxes on wagers and on the occupation of accepting wagers. That is, it is the government's position that the warrant was issued on the theory that when an affiant gives evidence that he has *ob-*

*served* a crime, and asserts his *belief* that the crime was committed by certain instruments, the issuing authority has probable cause to issue a warrant to search for the instruments. This argument is obviously premised on Federal Criminal Procedure Rule 41(b) (2) which provides that "[a] warrant may be issued under this rule to search for and seize any property. * * * (2) designed or intended for use or which is or has been used as the means of committing a criminal offense."

■ Where either evidence directly observed (see Dumbra v. United States, 268 U.S. 435, 441, 45 S.Ct. 546, 69 L.Ed. 1032) or reliable hearsay evidence (see Jones v. United States, 362 U.S. 257, 267–272, 80 S.Ct. 725, 4 L.Ed.2d 697) is sufficient to lead a reasonably discreet and prudent man to believe both (a) that an offense has been committed, and (b) the commission involved the use of certain types of articles, then a warrant may issue to search for those articles. Dumbra v. United States, above; Jones v. United States, above; United States v. Ramirez, 2nd Cir., 279 F.2d 712, 716; Merit v. United States, 5th Cir., 249 F.2d 19, 21; United States v. Trujillo, 7th Cir., 191 F.2d 853; Shore v. United States, 60 U.S.App.D.C. 137, 49 F.2d 519. Federal Criminal Procedure Rule 41(b) (2).

But without challenging the rule just stated, defendant argues that a reasonably discreet and prudent man upon the evidence before the Commissioner would not have probable cause to believe both that a crime had been committed and that the crime had involved the use of the type of records, publications, and other paraphernalia referred to in the warrant.

Defendant points out that D'Alessandro's and Rose's affidavits recite as facts observed by them only that D'Alessandro saw Jane Doe accept wagers on at least four occasions at Leaders Grocery, and that Rose found no registration of a bookie at the address of Leaders Grocery.

Defendant first contends that these facts taken together do not show that a crime was committed at Leaders Grocery. The wagers may have been of a type for which no registration is required. Jane Doe may have had no fixed relationship to Leaders Grocery, as an owner or employee or other person with such a connection with the premises as to be expected to register at that address. Moreover, Jane Doe may have been registered at her home rather than at the place where she accepted bets. Hence there is no logical ground to believe that Jane Doe or anyone else committed a crime.

Defendant next contends that even if Jane Doe committed a crime at Leaders Grocery there is not in the affidavits any evidence as to the instruments, if any, that she used. She may merely have gone to the telephone and communicated the wagers to a bookie at some distant place. Or she may have relied on her memory. Nor is there the slightest indication as to the subject on which the wagers were made; they could have related to horse-racing, dog-racing, bank clearance numbers, political elections, or the weather. Nor is there any statement that Jane Doe received money; the wagers may have been on credit. Hence there is no logical relation to connect the observation of wagers of an unspecified type with a warrant to search premises for records, pads, pencils, racing forms, money, and other gambling paraphernalia.

The Government's answer is to the following effect.

When a person accepts four wagers on the same premises and no one registered as a bookie at that address, a Commissioner could reasonably believe that (1) some of those wagers were within the coverage of the federal tax law, (2) the person who accepted four wagers at the same place did business there, and (3) if the person were registered she probably would be registered at the place where she does business. Thus the Government's first step in supporting the warrant is that the Commissioner had reasonable ground to believe that Jane Doe

had violated 26 U.S.C. § 7203 by wilfully failing to pay the federal taxes on the occupation of accepting wagers.

Next the Government contends that although the Commissioner had no evidence as to what instruments Jane Doe used in taking wagers, common experience would logically support him in inferring that (1) a person who took wagers did not rely on his memory or solely on a telephone call to a distant point, but instead used records, pads, racing forms, and so forth, and (2) such records would be on the premises where bets were habitually made. Thus the Government's second step in supporting the warrant is that the Commissioner had reasonable ground to believe that in violating 26 U.S.C. § 7203 she used the articles specified in the search warrant.

Finally, the Government points out that in a close case a court must presume that the Commissioner acted upon the basis of probable cause. Jones v. United States, 362 U.S. 257, 267, 80 S.Ct. 725, 4 L.Ed.2d 697; United States v. Ramirez, 2nd Cir., 279 F.2d 712, 716.

I conclude that the search warrant is invalid.

In this particular case, the Commissioner recited that he issued the warrant based on D'Alessandro's belief that the records and other paraphernalia were held and *possessed* in violation of federal law. That belief was untenable. One might as well assert that in the case of an individual who had wilfully evaded paying his federal income tax, he held and possessed his check book in violation of law. Indeed D'Alessandro's belief was expressed in such an untenable form that I am confident that the Commissioner did not take precise notice of D'Alessandro's affidavit, and I, therefore, cannot apply the rule that a Commissioner's warrant has the benefit of the presumption of regularity.

Furthermore, even if I were to construe the warrant as searching for records which were not possessed but were *used* in evading the tax on the occupation of wagering, I should hold the warrant invalid.

■ In so stating, I do not imply that there was no probable cause for D'Alessandro and the Commissioner to believe that Jane Doe had committed the misdemeanor of wilfully evading the federal tax upon the occupation of accepting wagers. For that belief there was ample basis. The Commissioner need not be furnished with proof of every element of a crime; nor with proof that no exception applies; nor with proof that nowhere was the defendant registered under the tax act.

But I do point to the absence of any detailed recital as to the wagering transactions which D'Alessandro observed. I cannot tell whether D'Alessandro saw any records or pads or other paraphernalia. If he never saw any such articles, I do not know on what basis he or the Commissioner formed their belief that such articles were present.

■ Where the correlation between the type of crime observed and the type of article sought to be seized is not made *explicit* by reference to personal observations, see Dumbra v. United States, 268 U.S. 435, 441, 45 S.Ct. 546, 69 L.Ed. 1032, or to reliable hearsay, see Jones v. United States, 362 U.S. 257, 267, 80 S.Ct. 725, 4 L.Ed.2d 697, or to common experience of which one may take judicial notice, it is rare indeed that one can feel any assurance that the issuing authority acted as, in the words of Justice Stone in Dumbra v. United States, 268 U.S. 435, 441, 45 S.Ct. 546, 549, 69 L.Ed. 1032, "a reasonably discreet and prudent man". A prudent man would be mindful of the policies of privacy and civil liberty enshrined in the Fourth Amendment to the Constitution. And just as that Constitutional policy precludes him from issuing a search warrant upon a mere belief, (unsupported by direct observations or reliable hearsay,) that a crime has been committed on the premises, Nathanson v. United States, 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159, so he would hesitate to issue a search warrant for a particular type of article unless he had some better basis than unsupported belief for assuming that the

article was used in connection with a known crime.

Bearing in mind the considerations just recited, I am of the view that the skimpy affidavit of D'Alessandro lacked explicit detail adequate for a reasonably discreet and prudent man to have probable cause to find from observations of four undescribed wagers at Leaders Grocery a logical basis for believing that at that Grocery there were gambling records and gambling paraphernalia.

Motion to suppress granted.