UNITED STATES of America

v.

Nathan DUBIN, Abraham Hershman, Steven Roomian, Nathan Cooperstein, Samuel Berkowitz, Jack Lubell, Thomas Anselmo.

Crim. No. 62–233.

United States District Court
D. Massachusetts.

May 3, 1963.

W. Arthur Garrity, Jr., U. S. Atty., William F. Looney, Jr., Asst. U. S. Atty., for the United States.

Jackson J. Holtz, Boston, Mass., for defendant Nathan Dubin.

Walter J. Hurley and George F. Hurley, Boston, Mass., for defendant Steven Roomian.

Francis J. DiMento, Boston, Mass., for defendant Abraham Hershman.

Samuel Leader, Chelsea, Mass., for defendant Samuel Berkowitz.

Max Singer, Boston, Mass., for defendants Jack Lubell, Nathan Cooperstein and Thomas Anselmo.

Cornelius J. Sullivan, Holtz, Sullivan & Zonderman, Boston, Mass., for defendant Thomas Anselmo.

FRANCIS J. W. FORD, District Judge.

Defendants in this case move under Rule 41(e) to suppress certain evidence seized in the course of the execution of certain search warrants or taken from the defendants at the time of their arrest. (Defendant Roomian has waived his motion to suppress solely as to property taken from him at the time of his arrest.) The search warrants involved were issued for the search of two floors of a building at 353 Broadway in Chelsea, and of Harmony Bar and Cocktail Lounge and the Topside Billiards, both located on Fifth Street in Chelsea.

The application for the search warrant at 353 Broadway charged that there was concealed on the premises paraphernalia commonly used in the business of accepting wagers. It was supported by a lengthy affidavit of D'Alessandro, a Special Agent, Intelligence Division, Internal Revenue Service, in which are set out the observations of the agents as to the activities of certain described individuals who daily visited various places in Chelsea where the agents had placed wagers or seen wagers being placed, who carried brown paper bags from these locations to a service station from which larger paper bags were taken to 353 Broadway, where some or all of the persons described gathered regularly every afternoon for a period of two to two and one-half hours. There is also an affidavit of another Special Agent that a search of the records of the District Director, Internal Revenue Service, at Boston disclosed no record of the registration of any person as engaging in the business of accepting wagers at 353 Broadway.

The facts stated in the D'Alessandro affidavit clearly furnish reasonable ground for believing that the premises at 353 Broadway were being used as a so-called "bank" where lottery slips were collected and evaluated. There is nothing, however, to support any belief that the lottery operation involved was being carried on in violation of the federal wagering tax statutes. The fact that no one was registered as being in the business of accepting wagers at that address is irrelevant, since there is no statement in the affidavit that wagers were ever accepted at that place. Consequently this was not a place where the business of accepting wagers was actually being carried on, and did not have to be registered as a place of business. See the unreported opinion of Wyzanski, J. in United States v. One 1959 Chevrolet Four-Door Hardtop Impala, D.Mass. MC No. 60–25–W. There is no affidavit to indicate that no one was registered as being in the business of accepting wagers at the various places where the affidavit alleges wagers were made.

 In the case of the search warrants for the Harmony Bar and Cocktail Lounge and the Topside Billiards the affidavit sets forth in each case that the agent has reason to believe that on the premises "There is now being concealed certain property, namely, books, records, papers, notebooks, pencils, memoranda sheets, racing forms (so-called), money and other paraphernalia commonly used in the business of accepting wagers, which are being held and possessed in violation of Title 26, U.S.Code, Sections 4401, 4411, 4412 and 7203, in that the special tax required by Section 4411 has not been paid for the fiscal year ending June 30, 1962." In support of this there is an affidavit of the agent that certain named or described persons "did accept wagers from the complainant" on the premises in question and an affidavit that a search of the records of the District Director fails to disclose that any person or persons has registered as being in the business of accepting wagers at the address described.

The issue here is whether the facts set forth in these complaints and the supporting affidavits would justify a finding that there was reasonble cause to believe that gambling paraphernalia used or intended to be used in violation of the wagering tax act were concealed on the premises in question. The essential statement of the affidavits is that on each of these premises certain persons accepted wagers from a special agent. First of all, there is no indication of the type of wager, and hence no factual basis for believing that the wager placed was one which fell within the statutory definition of 26 U.S.C.A. § 4421. More serious, however, is the absence of any statement of the circumstances which would afford any basis for believing that any gambling paraphernalia were concealed on the premises. There is no statement that the agents saw any of the books and papers or other property of the type listed in the complaint. There is not even any indication that a pencil and paper was used to make any notation of the wagers placed by the agents. But even assuming that it could be inferred that one who accepts wagers will make some such record, there is nothing set forth to support any belief that any such record was concealed on the property. From the very description of the premises in the affidavit as a bar and a billiard parlor, it appears they are public places. The mere fact that persons present in such a place accept wagers is no basis for believing that any paraphernalia used in their wagering business are to be found on the premises. There should be some further description of the circumstances of the taking of the wagers or the connection of such persons with the premises before there is any basis for such a conclusion. Such facts are completely lacking in the affidavits here. (See the opinion of Wyzanski, J. in United States v. Conway, D.Mass., 217 F.Supp. 853.

 The arrest warrants for defendants Hershman, Lubell, Cooperstein and Anselmo were all John Doe warrants obtained on complaints charging defend-

ants with accepting wagers without having registered and purchased the special occupational tax stamp. The complaint in each of these cases is supported by the D'Alessandro affidavit referred to above together with an affidavit of a special agent that no one had registered as being in the business of accepting wagers at 353 Broadway. The D'Alessandro affidavit sets forth the activities as observed by the agents of persons described in the same words used to describe these individuals in the warrants for which they were arrested. These activities included their regular meetings at 353 Broadway, visits to various places where the agents had placed wagers and the carrying of brown paper bags between these places and 353 Broadway. Nowhere, however, is there any statement that any of these described individuals accepted a wager from the agents or from anyone else. While it might reasonably be concluded from the facts set forth that defendants had some part in a lottery operation as messengers or pickup men, there is no factual basis for a finding of probable cause that any of these individuals was accepting or receiving wagers himself so as to be subject to the requirements of registration and purchase of a tax stamp.

■ The complaint on which the arrest warrant for defendant Dubin was issued was filed on the day after the raid on the Harmony Bar and Cocktail Lounge, of which Dubin is alleged to be part owner. There is an affidavit of an agent as to the association of Dubin with certain other persons alleged to have visited 353 Broadway, and that two individuals accepted wagers at the Harmony Bar. However, the principal facts are those set forth in the complaint relating to the discovery of wagering paraphernalia in Dubin's office in the course of the search of the Harmony Bar. This arrest warrant for Dubin must therefore be found to have been based substantially on the fruits of the illegal search of the Harmony Bar and Cocktail Lounge and therefore it was improperly issued.

■ The complaint against Berkowitz sets forth the statement of a special agent that Berkowitz "did accept wagers from the complainant at Topside Billiards, 15A Fifth Street and the Harmony Bar and Cocktail Lounge, 13–15 Fifth Street, both in Chelsea, Massachusetts, on or about March 27, 1962", together with a statement that the records of the District Director fail to disclose any person or persons as having registered or purchased a tax stamp as being engaged in the business of accepting wagers at either of those addresses. There is no statement that Berkowitz, whose name was known to the agents, had not registered and purchased a stamp. Furthermore, there is only the bare allegation that Berkowitz accepted wagers with nothing as to the nature of these wagers from which it could be found, other than by accepting the conclusion of the agent, that these were wagers subject to the wagering tax law.

■ As to all of the search warrants and arrest warrants involved in this case, the same conclusion must be drawn. In each instance there has been a failure to set forth sufficient facts to warrant a finding that probable cause existed for the issuance of the warrant. It is not enough that the agents believe that probable cause exists or that they may know facts which would justify such a finding. The decision must be that of the commissioner issuing the warrant, and he must have presented to him the essential facts needed to justify a finding of probable cause. Giordenello v. United States, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503. No sufficient basis for a finding of probable cause was shown here, and the property taken on the search warrants or taken from the defendants at the time of arrest must be suppressed as evidence.

■ Defendant Berkowitz also seeks suppression as evidence of his automobile together with its contents, seized at about the time of the execution of the search warrants. The government admits that the car was not taken under a warrant but was seized by the agents on administrative order of their superiors under 26 U.S.C.A. § 7321. It is true that the fact that seizure of the auto-

mobile was made without warrant is no bar to enforcement of a forfeiture of the vehicle. Interbartolo v. United States, 1 Cir., 303 F.2d 34. This, however, does not mean that evidence thus seized is thereby admissible even though otherwise it was taken in violation of the Fourth Amendment. Here there was no warrant authorizing search and seizure of the vehicle. No argument has been made that the seizure was made under circumstances where seizure without warrant was justifiable. In fact, it appears from the D'Alessandro affidavit that the agents when they applied for search warrants had information as to the use and movements of the car in question on which they might have asked for a search warrant for the car. Hence the motion to suppress should be allowed as to the automobile and its contents.

Defendants' motions to suppress are allowed.