UNITED STATES of America

v.

Nathan COOPERSTEIN, Jacob Goldstein, and Robert A. Anzalone.

Crim. No. 63–218–W.

United States District Court
D. Massachusetts.

Sept. 13, 1963.

W. Arthur Garrity, Jr., U. S. Atty., William F. Looney, Jr., Asst. U. S. Atty., for the United States.

Singer & Singer, John H. FitzGerald, Chelsea, Mass., S. Roy Remar, Boston, Mass., for defendants.

WYZANSKI, District Judge.

Pursuant to Federal Rule of Criminal Procedure 41(e), each of the three defendants has moved before trial, first, for the suppression for the use as evidence of property taken from 35 Heard Street, Chelsea, and, second, for both the return of and the suppression for the use as evidence of property taken from him at the time of his arrest.

In support of these motions, no oral testimony was offered. Each defendant offered as exhibits the proceedings before United States Commissioner Nelligan with respect to the issuance of the Commissioner's warrant for the search of 35 Heard Street and the issuance of the Commissioner's warrant for the particular defendant's arrest.

■■ It is needless to consider the evidence or the law concerning whether there was probable cause for the issuance of the search warrant, or whether it was in any aspect of its issuance or execution invalid. In the exhibits before this Court there is no evidence that any of these defendants was on the premises at 35 Heard Street when the search warrant was executed (cf. Jones v. United States, 362 U.S. 257, 267, 80 S.Ct. 725, 4 L.Ed.2d 697), or that he owned, possessed, or had any interest in the property taken from those premises. Ibid., 362 U.S. p. 265, 80 S.Ct. p. 733, 4 L.Ed. 2d 697. Under Rule 41(e) "In order to qualify as a 'person aggrieved by an unlawful search and seizure' one must have been a victim of a search or seizure, one against whom the search was directed, as distinguished from one who claims prejudice only through the use of evidence gathered as a consequence of a search or seizure directed at someone else." Ibid., 362 U.S. p. 261, 80 S.Ct. p. 731, 4 L.Ed.2d 697. In the present case none of the three defendants has shown that he has a standing to bring that part of his motion which is directed at suppressing the use as evidence of property taken from 35 Heard Street. Hence, for want of standing, the first prayer in each motion is denied.

As background for ruling upon the second prayer, it will be helpful briefly to note the substantive federal law imposing taxes upon the receipt of wagers, the occupation of receiving wagers, and the requirement of registration by a person in such occupation.

26 U.S.C. § 4401(a) imposes a tax on wagers, said tax being a liability, under 26 U.S.C. § 4401(c), on a "person who is engaged in the business of accepting

wagers." 26 U.S.C. § 4411 imposes "a special tax of $50 per year to be paid by each person who is liable for tax under section 4401 or who is engaged in receiving wagers for or on behalf of any person so liable." 26 U.S.C. § 4412(a) provides that "Each person required to pay a special tax under this subchapter [that is, the subchapter including § 4411] shall register with the official in charge of the internal revenue district * * *." 26 U.S.C. § 7203 makes it a misdemeanor for any person required under this title [that is, the title including §§ 4401, 4411, 4412, etc.] to pay any tax or supply any information willfully to fail to pay such tax or supply such information.

■ In construing the foregoing statutes, United States v. Calamaro, 354 U.S. 351, 77 S.Ct. 1138, 1 L.Ed.2d 1394, Ingram v. United States, 360 U.S. 672, 79 S.Ct. 1314, 3 L.Ed.2d 1503, and Interbartolo v. United States, 1st Cir., 303 F. 2d 34, have made it clear that a so-called "pick-up man" in that type of lottery called the "numbers game" *who has no proprietary interest in the enterprise* and acts merely as a messenger transmitting records of wagers from the "writer" (an agent who accepts wagers from bettors) to the "banker" (the principal for whom the wagers are accepted) is not "engaged in receiving wagers for or on behalf of any person", within the meaning of 26 U.S.C. § 4411, and, therefore, is not subject to the $50 special occupational tax imposed by § 4411, or to the registration provisions of § 4412. However, a "pick-up man" charged under 26 U.S.C. § 7203 with having willfully failed to pay the tax under 26 U.S.C. § 4411 and to register under 26 U.S.C. § 4412 may be justly convicted if he is found to be a "writer", "banker", "or to have 'a proprietary interest in such lottery operation.'" Ingram v. United States, 360 U. S. 672, 675, 79 S.Ct. 1314, 3 L.Ed.2d 1503.

Against this background it is appropriate to consider the exhibits. As to each defendant there were offered:

1. Affidavits (identical in the case of each defendant) made by (a) Martin and Halm, each being a Criminal Investigator, Alcohol and Tobacco Tax Division, Internal Revenue Service, and by (b) Rose, Special Agent, Intelligence Division, Internal Revenue Service.

2. A complaint (a) which was made upon oath by Martin, pursuant to Federal Rule of Criminal Procedure 3, before Commissioner Nelligan (b) which charged that defendant with willful failure to comply with 26 U.S.C. § 4411 and 4412 and, hence, violation of 26 U.S.C. § 7203, and (c) which had attached to it the aforesaid affidavits.

3. A warrant for the arrest of that defendant to answer the foregoing complaint.

The affidavits referred to in item 1 above set forth the personal observations of Martin and Halm and some observations of their official associates in a text that covered more than three single-spaced typewritten pages of legal size. This text in detail recites that (1) at various specifically identified places in Chelsea, at which no one was registered to carry on the occupation of receiving wagers, specifically identified persons received wagers; (2) specifically identified persons carried, in paper bags or envelopes, the wagering slips and cash from these betting places to a central "bank" at 35 Heard Street, at which no one was registered; and (3) each of the three defendants came to or left from 35 Heard Street on at least seven different days.

Each defendant's principal contention is that with respect to him the affidavits show no more than that he is a pick-up man or a person who frequently has been seen entering or leaving the premises where banking operations of a lottery may be conducted. The argument is that neither the affidavits nor the complaint show that he is a person subject to the occupational tax and registration requirements, and that, therefore, the Commissioner had no probable cause to issue a warrant for his arrest.

Some support for that contention is said to be found in the opinion of Judge Ford in United States v. Dubin, D.C. Mass., 217 F.Supp. 206, as well as in my

own opinion in United States v. Conway, D.C.Mass., 217 F.Supp. 853.

It is always important in cases involving the validity of an arrest, after carefully scrutinizing the precise facts to return to first principles, and not to be diverted at the outset by alleged analogous cases unless the purported analogies are completely congruent and were decided by courts whose views are binding upon this Court.

■ To be valid, an arrest warrant must be based upon probable cause. U.S. Const., Am. 4; Federal Criminal Procedure Rules 3 and 4 as interpreted in Giordenello v. United States, 357 U.S. 480, 485–486, 78 S.Ct. 1245, 1249, 1250, 2 L.Ed.2d 1503. Probable cause exists "where 'the facts and circumstances within their [the affiants'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." Ker v. California, 374 U.S. 23, 35, 83 S.Ct. 1623, 1630, 10 L.Ed.2d 726. Brinegar v. United States, 338 U.S. 160, 175–176, 69 S.Ct. 1302, 93 L.Ed. 1879.

■ To constitute "probable cause" it is by no means necessary that there should be before the Commissioner or other authority issuing the arrest warrant admissible evidence or even hearsay covering every essential aspect of the offense believed to have been or being committed. The burden of proof for a warrant of arrest is quite different from the one which ultimately the prosecution must bear at the trial when, of course, it must prove beyond a reasonable doubt *every essential element* of the crime charged. So far as concerns probable cause for the issuance of an arrest warrant, or indeed for an arrest without a warrant, the test is whether the reliably trustworthy information includes *enough* of the essential facts to persuade what in Dumbra v. United States, 268 U.S. 435, 441, 45 S.Ct. 546, 548, 69 L.Ed. 1032 Justice Stone called "a reasonably discreet and prudent man" that, in the words of Rule 4(a) quoted by Justice Harlan in

Giordenello v. United States, 357 U.S. 480, 485, 78 S.Ct. 1245, 1249, 2 L.Ed.2d 1503, "there is probable cause to believe [BOTH] that an offense has been committed and that the defendant has committed it."

■ *Ordinarily when the trustworthy evidence makes it clear that an offense has been committed and that a particular person was on the scene at the time it was committed, and the then available evidence makes it reasonable to infer that the particular person not necessarily was but may have been one of the offenders, most discreet and prudent men would order that person's arrest.* After all, an arrest is not a conviction of a crime. It is not even a final formal charge of a crime. It is merely an order holding a person in custody until he answers a complaint. The security interest of the public in preventing the escape of a likely wrongdoer in connection with an already known misdemeanor outweighs the interest of the individual in being free to go at large during the few hours before he can answer the charges and be released on bail. See Federal Criminal Procedure Rule 5.

■ The latest case in the Supreme Court dealing with arrests, Ker v. California, 374 U.S. 23, 36–37, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963), involves a situation not unlike the one at bar, except that there the arrest was without any warrant. And, of course, if an arrest without a warrant is valid, *a fortiori* an arrest with a warrant issued on the same information is likewise valid. In the case just cited, the question was whether there was probable cause to arrest Mrs. Diane Ker for possession of marijuana in violation of § 11530 of the California Health and Safety Code. The arresting officers had evidence, at best, that Mrs. Ker's husband had been selling marijuana from the apartment where they both lived, and that the narcotic was in a prominent position on the kitchen sink. There was no direct evidence that Mrs. Ker shared her husband's possession of the drug. And it was assumed that she could not be convicted of a crime

under § 11530 unless the prosecution proved beyond a reasonable doubt that she was in joint possession of the marijuana. Yet the officers arrested her, and this arrest was held by the Supreme Court to be based on probable cause. Justice Clark, 374 U.S. at pp. 36–37, 83 S.Ct. at pp. 1631, 1632, 10 L.Ed.2d 726, said:

> "Even assuming that her presence in a small room with the contraband in a prominent position on the kitchen sink would not alone establish a reasonable ground for the officers' belief that she was in joint possession with her husband, that fact was accompanied by the officers' information that Ker had been using his apartment as a base of operations for his narcotics activities. Therefore, we cannot say that at the time of her arrest there were not sufficient grounds for a reasonable belief that Diane Ker, as well as her husband, was committing the offense of possession of marijuana in the presence of the officers."

The general principles stated above and the recent precedent of Mrs. Ker's case support Commissioner Nelligan's determination that there was probable cause to issue the warrants for the arrest of these defendants. From the Martin and Halm affidavits the Commissioner could reasonably conclude that some persons at 35 Heard Street were there receiving as "bankers" of a lottery, or as persons having a proprietary interest in a lottery, "wagers" as defined in § 4401, that for activity at that address those persons were subject to a tax under § 4411, that those persons were required by § 4412(a) (2) to register 35 Heard Street with the official in charge of the internal revenue district, and that they had failed to do so.

The Commissioner could not be certain whether any particular frequenter of the premises was a "banker" or other person having a proprietary interest in the lottery operation, but he could discreetly and prudently infer that each person who visited the scene with regularity had enough earmarks of proprietorship so that there was probable cause to arrest him to answer a complaint that he had violated §§ 4411 and 4412 and was, under the doctrine of United States v. Calamaro, 354 U.S. 351, 77 S.Ct. 1138, 1 L.Ed.2d 1394 as explained in Ingram v. United States, 360 U.S. 672, 675, 79 S.Ct. 1314, 3 L.Ed.2d 1503, guilty under § 7203. To be sure, at a trial the person arrested might not be proved to be a proprietor. He might not be proved to be willful. But enough had been shown to arrest him to answer a complaint.

My conclusion that there was probable cause in the instant case for Commissioner Nelligan to issue warrants for the arrest of these three defendants is not contrary to my opinion in United States v. Conway, supra. That case involved a search warrant, not warrants for arrest. Moreover, the facts have no resemblance to the present case.

United States v. Dubin, D.C., 217 F. Supp. 206 (May 3, 1963) more nearly resembles the case at bar. At pp. 208–209, Judge Ford held that certain arrest warrants were invalid. It seems that the persons arrested had been observed carrying bags from places where wagers were placed and where no one was registered to a "bank" where lottery slips were collected and evaluated. Judge Ford said 217 F.Supp. at page 209:

> "While it might reasonably be concluded from the facts set forth that defendants had some part in a lottery operation as messengers or pick-up men, there is no factual basis for a finding of probable cause that any of these individuals was accepting or receiving wagers himself so as to be subject to the requirements of registration and purchase of a tax stamp."

Perhaps if Judge Ford had had the benefit of the opinion by the Supreme Court in Mrs. Ker's case, delivered more than five weeks after the opinion in the Dubin case, he would have concluded that there was probable cause for the issuance of the warrants of arrest. Or perhaps the whole record before Judge Ford

made the case before him significantly different from the one before me. In any event, it seems to me that I am compelled to follow the teaching of the Ker case, and to uphold the warrants of arrest.

Motions denied.