UNITED STATES of America

v.

Thomas R. FARESE
and
Peter Werner Mueller.

Cr. No. 64-259.

United States District Court
D. Massachusetts.

June 16, 1965.

Paul M. Hunt, Asst. U. S. Atty., for United States.

Alfred Farese, Everett, Mass., for Farese.

Paul Redmond, Boston, Mass., for Mueller.

CAFFREY, District Judge.

On October 29, 1964, defendant Mueller filed a motion to suppress, *inter alia*, "any materials of any kind whatsoever, if any there be, taken from a garage in Brighton, Massachusetts, by agents of the Federal Bureau of Investigation prior to his indictment in the instant case." The motion was heard on May 24, 1965 and orally denied at the conclusion of the hearing. Mueller and his co-defendant were tried thereafter. Only Mueller was convicted by the jury.

From the testimony of Wendell Flagg, the sole witness (called by defendant) at the hearing of May 24, I find the following facts.

On December 27, 1963, at approximately 11:00 p. m., Flagg, a rental agent for Allison, the owner of a complex of garages in Brighton, Massachusetts, received a telephone call as a result of which he went to the garage area shortly after 11:00 p. m. There he met two men (identified by him at this hearing as the two defendants). He discussed rental terms with them and advised them that the rent was $15.00 a month for each stall, payable in advance, and that they were to supply their own locks. The defendants left a black 1963 Cadillac hard-

top with Massachusetts plates in one stall and while Flagg worked repairing the doors the defendants returned and left a new maroon Cadillac convertible with Texas plates in the other stall. Flagg received $30.00 in cash and gave the defendants a receipt. He also gave them the name and address of the owner and told them they could either mail payment for the next month's rent, due on January 27, 1964, to the owner, or bring it to Flagg's house. He testified that about January 4, 1964 he went by the garage to make a record of the number plates since due to the bitter cold on the night of December 27 he had not taken the name or address or telephone number of either of the two men. He discovered that there were no plates on either car.

On or about January 28 an advertisement offering a reward for the recovery of several Cadillacs stolen from the Hertz Rent-a-Car appeared in one of the Boston newspapers. This was called to Flagg's attention and on January 30 he called the Boston police and asked their assistance in determining whether these two cars were included in the group for which Hertz was offering a reward, and also whatever assistance the police could give in determining the identity of the persons responsible for the next month's rent. He met the police at the garage on January 30, at which time only the black car was there. Its vehicle identification number had been removed from the left doorpost. It was impounded by the police.

■■■■ Defendant contends that the entry of the police at the invitation of Flagg was illegal since no search warrant had been obtained. I find and rule that the tenancy at will had terminated by virtue of the landlord's exercise of his right of reentry and his reassertion of control of the stalls; that the landlord was excused from the requirements of Mass.G.L. ch. 186, sec. 12, since there was no way of knowing to whom and where notice should be sent, and that this statute did not provide the exclusive mode of determining the tenancy in this situation; that on January 30 neither defendant had any right to exclusive oc-cupancy or possession of the garage stalls; that both stalls were left unlocked and unpaid for; that the owner had a right to take whatever action in the form of self-help he reasonably could to identify his former tenants; and that because of the removal of the license plates and the absence of other means of determining the identity of the men who rented the stalls, the owner, acting through his representative Flagg, was conducting himself reasonably in causing physical examination of the remaining car to be made in the hope that it would furnish a clue to the identity of the strangers who had made the rental.

Flagg also testified that pilferage from cars in unlocked stalls had occurred and that "it is expensive to leave it open." From this I infer that the owner of the premises acting through Flagg was concerned, *inter alia,* in protecting himself from liability for possible damage to the black Cadillac after the expiration of the one month for which rent had been paid.

I further find and rule that these garage stalls were not shown to be physically connected with or functionally or integrally related to any dwelling place of either defendant; that neither defendant was physically present, nearby, or attempting to exercise actual dominion or control over the stalls; that neither defendant claimed ownership of the cars; and that given the impersonal character of the premises, the furtive nature of the defendants' conduct in failing to disclose their identity and their indifference to the cars (only one of which remained on January 30), as shown by their failure to lock the stalls, there was little likelihood that the defendants would return.

■■■ On the basis of the foregoing I rule that the defendants have not shown any grounds for complaint and that they have suffered no intrusion into an area constitutionally protected as to them.

■■■ I further find and rule so far as concerns a certain piece of cardboard box found with its address label torn off on the floor of one of the stalls (later introduced into evidence at trial as against

**576**

the defendant Mueller), that this item was discovered in the course of the entry into the stalls which I have ruled proper, and that at the time the item was found it had been completely discarded and abandoned, i. e., that possession and control over it had been relinquished by some person prior to and independent of the entry of the police into the garage stalls.

Neither defendant was or even claims to have been on the premises on January 30 nor did either defendant own, possess, or have any interest in property taken from the stall on January 30, 1964. See United States v. Cooperstein, 221 F. Supp. 522, 524 (D.Mass.1963).

In sum, neither defendant has cause to complain of any incursion into his rights of property, privacy, or personal liberty which it is the basic purpose of the Fourth Amendment to protect. For these reasons the motion to suppress has been denied. Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960).