377 So.2d 787 (1979)
Alam SHAFI, Appellant,
v.
STATE of Florida, Appellee.
No. MM-349.
District Court of Appeal of Florida, First District.
December 7, 1979.
*788 J. Craig Williams of Williams & Stapp, Jacksonville, for appellant.
Jim Smith, Atty. Gen. and Carolyn M. Snurkowski, Asst. Atty. Gen., for appellee.
ERVIN, Judge.
Shafi's appeal from his conviction of possession of hashish questions the trial court's findings that he had no standing to object to the search of his luggage by United States Border Patrol officers and that, even assuming standing existed, the search was permissible since carried out pursuant to 8 U.S.C. § 1357.
Border Patrol officers received information from a reliable, confidential informant that two aliens were at the Jacksonville Bus Depot who were believed to be illegally in the country. The officers stopped Shafi and his companion, Khan, not a party to this appeal, and questioned their immigration status. Shafi produced a marriage certificate, showing his marriage to a United States citizen, as well as an immigration bond receipt. When Khan was unable to produce any identification papers, the officers asked Khan, through Shafi's interpretation, to return with them to the immigration office a few blocks away for questioning. They also asked Shafi to accompany them for the purpose of acting as an interpreter. At the office, a search was conducted of both aliens' luggage, ostensibly to establish their legal presence within the United States. The search uncovered hashish. The basis for the lower court's finding that Shafi lacked standing to object was that both he and his companion denied ownership of the luggage found within their possession.
The court's order limiting standing only to articles which a defendant claims ownership is much too narrow. Shafi testified that shortly before his detention by the officers, two unknown persons had left their luggage with them while they went outside the depot to get something. Shafi clearly had possession of that bag which he was found carrying, an attache case. Prior to Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), which significantly expanded the scope of standing,[1] the conventional rule was that one was required to have owned or possessed the seized property or to have had a substantial possessory interest in the premises searched. 326 U.S. at 261, 80 S.Ct. at 731, 4 L.Ed.2d at 702-703. One's standing to object to a search was derived from common law property principles, and if the person from whom goods were taken could establish a sufficient possessory interest in them, he could at common law maintain an action in replevin or conversion. Knox, Some *789 Thoughts on the Scope of the Fourth Amendment and Standing to Challenge Searches and Seizures, 40 Mo.L.Rev. 1, 25, n. 167 (1975). A possessory interest then as now is the key to the right to bring an action for the conversion of one's goods. See 12 Fla.Jur.2d Conversion and Replevin, § 17 (1979). Standing to object to a search has never been contingent upon only a showing of ownership. Shafi must be considered to have established a sufficient possessory interest in the articles seized even in the absence of any ownership interest.
The more difficult question is whether the searching officers were empowered by statute to conduct a warrantless search of Shafi's luggage. Section 287(a)(1) of the Immigration and Nationality Act, 8 U.S.C. § 1357(a)(1), authorizes any officer or employee of the Immigration and Naturalization Service, without a warrant, "to interrogate any alien or person believed to be an alien as to his right to be or to remain in the United States." The statute contains no geographical limitation on the officer's authority, although Section 287(a)(3) of the Act, 8 U.S.C. § 1357 (a)(3), permits agents without a warrant "to board and search for aliens ... any railway car, aircraft, conveyance or vehicle. .", which is "within a reasonable distance from any external boundary of the United States... ." Under current regulations, the officer's authority may be exercised anywhere within 100 miles of the border.[2] 8 C.F.R. § 287.1(a) (1975). Section 1357(c) authorizes also border officers

to conduct a search, without warrant, of the person, and of the personal effects in the possession of any person seeking admission to the United States, concerning whom such officer ... may have reasonable cause to suspect that grounds exist for exclusion from the United States under this chapter.... (e.s.)
The lower court concluded that the officers had reasonable cause to suspect that Shafi and Khan were illegally within the United States and therefore the agents were authorized by statute to search both defendants' luggage.[3] While we accept the courts' finding that both were illegal aliens, we conclude it does not necessarily follow that the statute may automatically validate a warrantless search under circumstances such as those here involved.
The United States Supreme Court in four recent cases, Almeida-Sanchez v. United States, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973); United States v. Brignoni-Ponce, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); United States v. Ortiz, 422 U.S. 891, 95 S.Ct. 2585, 45 L.Ed.2d 623 (1975); United States v. Martinez-Fuerte, 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976), has steadfastly refused to apply the statute mechanically, notwithstanding its express terms. In Almeida-Sanchez v. United States, supra, the Supreme Court, while observing that subsection (a) of Section 1357 permits warrantless searches of automobiles within a reasonable distance from any boundary of the United States, nevertheless stated that "no Act of Congress can authorize a violation of the Constitution." 413 U.S. 272, 93 S.Ct. at 2539. The Court concluded, however, that under familiar principles of constitutional adjudication, it would construe the statute in a manner consistent with the Fourth Amendment, and upheld the statute's constitutionality *790 when applied in the following manner: Warrantless searches of vehicles and their occupants are permissible in the absence of probable cause when conducted only at the border or its functional equivalents. 413 U.S. at 272-73, 93 S.Ct. 2535.[4] All searches at any other place must comport with the search and seizure clause of the Fourth Amendment. Id. Additionally, searches of vehicles and their occupants at traffic checkpoints removed from the border must comply with Fourth Amendment standards. United States v. Ortiz, supra.
The Court has been careful to limit the Fourth Amendment's protection to searches  not stops. A roving Border Patrol, for example, may stop vehicles, even in the absence of probable cause, if the officers have "specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion that the vehicles contain aliens who may be illegally in the country." United States v. Brignoni-Ponce, supra, 422 U.S. at 884, 95 S.Ct. at 2582. Although a stop is justified upon founded suspicion, its scope is limited: "The officer may question the driver and passengers about their citizenship and immigration status and he may ask them to explain suspicious circumstances, but any further detention or search must be based on consent or probable cause." 422 U.S. at 881-82, 95 S.Ct. at 2580. Nor is it a violation of the Fourth Amendment for immigration officers to conduct brief investigatory stops of vehicles at reasonably located checkpoints removed from the border even in the absence of probable cause or, for that matter, without any individualized suspicion of facts indicating illegal entry into the United States. United States v. Martinez-Fuerte, supra. The Court's decision in Martinez-Fuerte was limited strictly to its facts, and it painstakingly observed that no search was involved. The Court again cautioned that if any further detention or search was carried out, it must be based upon consent or probable cause. 428 U.S. at 567, 96 S.Ct. 3074.
It is clear from the above opinions that Section 1357 can pass constitutional muster only if it is construed as sanctioning warrantless searches at the border or its functional equivalent. At all other areas Fourth Amendment standards prevail, and the statute has no application.[5] The state makes no argument that the Jacksonville Bus Depot is located at the border or that it may be considered the border's functional equivalent. The search of Shafi's personal effects must then be measured by Fourth Amendment standards.
The lower court found, and we agree, that no consent was given to search, and exigent circumstances did not exist to justify the warrantless search of Shafi's luggage. Accepting those findings, we conclude that the searching officers had no right to effect a forcible entry into Shafi's luggage without a warrant even had they possessed probable cause to believe a violation of the law. See United States v. Chadwick, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977); Arkansas v. Sanders, ___ U.S. ___, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979). In Chadwick, the Court held that the defendant had demonstrated an important Fourth Amendment privacy interest by placing his personal effects inside a foot-locker, *791 thereby manifesting a reasonable expectation that the contents within would remain free from public examination. And, even though the searching officers had probable cause to believe the footlocker contained contraband, the Court ruled the defendant's privacy interest could not be invaded without a warrant or a showing of exigent circumstances.
Shafi was entitled to the same Fourth Amendment safeguards as any United States citizen. He was not accorded them. The warrantless search must, under the circumstances, be condemned as unreasonable.
The lower court adjudged Shafi guilty and imposed sentence following Shafi's nolo plea to the charge, with the reservation of the right to appeal the denial of the motion to suppress. The judgment is reversed with directions that the case be remanded for further proceedings consistent with this opinion.
ROBERT SMITH, Acting C.J., concurs.
BOOTH, J., dissents.
NOTES
[1] While that portion of the Jones decision expanding standing has been drastically modified by later cases, Brown v. United States, 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973); Rakas v. Illinois, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), the long-standing rule that one must demonstrate a sufficient property interest in the articles seized to assert standing, discussed infra, remains intact.
[2] However, as to aircraft, the Commissioner of Immigration and Naturalization may approve searches at distances greater than 100 miles from the border "because of unusual circumstances." 8 C.F.R. § 281.1(b).
[3] Why it was necessary for the officers to search Shafi's luggage to determine his status is unclear since the officers initially appeared satisfied from the papers he produced that he was legally in the country, and in fact told him he was free to leave if he wished, but asked him to remain as an aid to them in interpreting communications between them and Khan. We will nevertheless accept the court's finding that the officers had reasonable cause to suspect Shafi's status since one of the officers testified at the hearing that he discovered after the detention that the immigration laws prohibit a crewman, such as Shafi, from adjusting his immigration status through marriage to a United States citizen. We note, however, that it is unclear from the record whether the officer discovered this information before or after the hashish was seized from Shafi's luggage.
[4] An example given of a functional equivalent of a border search is a search of passengers and cargo of an airplane arriving at a St. Louis airport following a nonstop flight from Mexico City. 413 U.S. at 273, 93 S.Ct. 2535.
[5] The Fifth Circuit Court of Appeals arrived at a similar conclusion after surveying the applicable Supreme Court opinions:

The singular characteristic of the Border Patrol cases is that the Supreme Court has chosen in each instance to strike its own balance of Fourth Amendment "reasonableness," without regard to the express terms of 8 U.S.C. § 1357. The Court has not relied on the statute or its implementing regulation, despite its language empowering Border Patrol agents to make warrantless searches and arrests within a reasonable distance of the border and the definition of that distance as 100 air miles. At most, the Court has indicated that the statute identified a potential governmental interest to be balanced against individual rights and affirmed the government's intent to act to protect that interest. United States v. Brennan, 538 F.2d 711, 719 (5th Cir.1976) (footnotes omitted).