388 So.2d 613 (1980)
Ernie W. NORMAN, Appellant,
v.
The STATE of Florida, Appellee.
No. 79-1202.
District Court of Appeal of Florida, Third District.
September 23, 1980.
Michael H. Bloom, Miami, for appellant.
*614 Jim Smith, Atty. Gen. and Steven L. Bolotin, Asst. Atty. Gen., for appellee.
Before SCHWARTZ and DANIEL S. PEARSON, JJ., and VANN, HAROLD R. (Ret.), Associate Judge.
DANIEL S. PEARSON, Judge.
We hold that no right of Norman's which the Fourth Amendment to the United States Constitution was designed to protect was infringed, where he disavowed any ownership, possessory or other interest in the house in which nearly two tons of marijuana were seized.[1]Rakas v. Illinois, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). Unless Norman, charged with a crime of possession, is entitled to claim "automatic standing" to challenge the legality of the search of the house, our holding will make it unnecessary to address Norman's claim that the search of the house[2] and the subsequent search of two vehicles were unlawful.[3]
Under a Fourth Amendment analysis, Norman cannot rely upon the possessory charge as a substitute for a factual finding that he had a legitimate expectation of privacy in the area searched. United States v. Salvucci, ___ U.S. ___, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980). But while Salvucci has done away with the automatic standing rule in respect to claims arising under the Fourth Amendment, Salvucci does not preclude a state from utilizing an automatic standing rule in state court proceedings.[4]
We must therefore decide whether the automatic standing rule of Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), overruled in Salvucci, survives in Florida.
Our course would be clear had the exclusionary rule laid down in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), been the victim of Salvucci. Such a ruling would have no effect upon our constitutional mandate that articles or information obtained as a result of an unreasonable search and seizure are not admissible in evidence. Art. I, § 12, Fla. Const.
"Mapp v. Ohio ... added nothing whatever to the law of Florida. It created no new procedural right so far as the jurisprudence of this State is concerned. This Court long ago concluded that evidence obtained as the product of an unreasonable search is not admissible in a *615 criminal proceeding. Florida has long recognized the so-called `exclusionary rule' regarding the inadmissibility of such evidence." Sing v. Wainwright, 148 So.2d 19, 20 (Fla. 1962).
See also Taylor v. State, 355 So.2d 180, 184 (Fla. 3d DCA 1978). But our Constitution does not accord a defendant the right to challenge an unreasonable search and seizure by virtue of the fact that he is charged with possession of the items seized. It was the United States Supreme Court in Jones which established this procedural right and the United States Supreme Court in Salvucci which took it away. Thus, unless the courts of this state have, apart from required adherence to Jones, decided that a defendant charged with a possessory crime is entitled to automatic standing, we are free to declare that the automatic standing rule is no more.
Thirty-four Florida cases have considered the Jones decision. With the exception of three cases, State v. Dycus, 238 So.2d 493 (Fla. 2d DCA 1970); Curry v. State, 355 So.2d 462 (Fla. 2d DCA 1978); and Prickett v. State, 305 So.2d 222 (Fla. 2d DCA 1974), the reliance on Jones concerned other aspects of that decision, e.g., the "legitimately-on-the-premises" concept of standing.[5]
In State v. Dycus, supra, the court acknowledged that Jones established the rule that when the prosecution alleges possession as the gravamen of the offense charged, it is estopped from denying the defendant standing to attack the seizure of the evidence allegedly possessed. The court held, however, that the automatic standing rule of Jones was inapplicable, since the time of the alleged possession and the time of the seizure were not the same.[6] In Curry v. State, supra, the court, following the Dycus analysis, held that the defendant, charged with a possessory offense occurring on a date different than the seizure complained of, could not rely on automatic standing, but could not be precluded from making an evidentiary showing that he in fact had a possessory interest in the premises searched. In Prickett v. State, supra, this court held that the defendants had standing to challenge a search both because they had a sufficient possessory interest in the premises searched and because:
"... in charging the defendants in the information with possession of illegal drugs, the state adopts an inconsistent position by arguing that the defendants now do not have standing. See Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960)."
Thus, Dycus and Curry implicitly acknowledged the binding effect of the automatic standing rule of Jones, and Prickett explicitly followed the rule.[7]
*616 Whether courts of this state were bound to follow the now abrogated standing rule of Jones, see n. 7, supra, is of no present concern. Our concern is only whether this state has established an automatic standing rule independently of Jones.
We conclude that the automatic standing rule has not become a part of this state's jurisprudence so as to survive the overruling of Jones. This conclusion does not, however, prevent us from resuscitating the rule. We decline to do so, however, since we fully agree with Salvucci that the protection against the "self-incrimination dilemma" that Jones was designed to afford is no longer needed in light of Simmons v. United States, supra, n. 1, and that the prosecution "may simultaneously maintain that a defendant criminally possessed the seized good, but was not subject to a Fourth Amendment deprivation, without legal contradiction." ___ U.S. at ___, 100 S.Ct. at 2552.[8] As the United States Supreme Court observed in Salvucci:
"... The doctrine now serves only to afford a windfall to defendants whose Fourth Amendment rights have not been violated. We are unwilling to tolerate the exclusion of probative evidence under such circumstances since we adhere to the view of Alderman that the values of the Fourth Amendment are preserved by a rule which limits the availability of the exclusionary rule to defendants who have been subjected to a violation of their Fourth Amendment rights." ___ U.S. at ___, 100 S.Ct. at 2554.
Accordingly, the possessory charge against Norman gave him no standing to object to a search of the premises. Having otherwise determined that Norman had no legitimate expectation of privacy in the premises, we hold that no right of his was infringed by the search in question.[9] We have examined Norman's remaining point on appeal and find it to be without merit. The judgment of the trial court is
Affirmed.
NOTES
[1] The testimony of one of the officers who approached Norman and Crawford (his co-defendant below, but not an appellant here) was:

"I asked them do they live here and they said no. I said `Is this your boat?' They said, `No. It's the owner's.' I said, `Well, where's the owner?' They said, `He's in back.' I said, `Where?' They said `In the back yard.'"
Norman, shielded by Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), testified at the suppression hearing. At that time, he claimed no interest in the house and made no effort to deny or explain the earlier statements attributed to him by the officer. His only disagreement with the officer's version of this conversation is found in his written motion to suppress where he stated that he told the officer he had come by his friend's house and they were going skiing. The consequence is that the officer's unrebutted testimony is compelling evidence that Norman had no privacy interest in the house. See United States v. Dall, 608 F.2d 910 (1st Cir.1979).
[2] Norman's claim that the search of the house was unlawful is based on an alleged trespass by the police on private property. We do note that entry by police upon private property in the conduct of a lawful investigation is not unlawful. See, e.g., State v. Garcia, 374 So.2d 601 (Fla. 3d DCA 1979). Moreover, a trespass is not a search, and contraband seen in plain view (found by the court below to have been seen through the open back door of the house) can be lawfully seized. United States v. Knight, 451 F.2d 275 (5th Cir.1971); Albo v. State, 379 So.2d 648 (Fla. 1980).
[3] Norman was charged in a one-count information with possession of more than one hundred pounds of marijuana. The State's intended proof included the marijuana found in the house and the vehicles. If, arguendo, the vehicle search were unlawful, the exclusion of the marijuana found therein would not be dispositive of this case and cannot be reviewed on a plea of nolo contendere. See Webb v. State, 373 So.2d 400 (Fla. 1st DCA 1979).
[4] Salvucci controls in proceedings in Federal Courts. In state court proceedings, a state is free to employ a more liberal view of standing. Zurcher v. Stanford Daily, 436 U.S. 547, 98 S.Ct. 1970, 56 L.Ed.2d 525, n. 9 (1978). See also Lego v. Twomey, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972).
[5] In Shafi v. State, 377 So.2d 787 (Fla. 1st DCA 1979), the court cites Jones as having expanded the scope of standing, but does not mention that Shafi's standing derives from the automatic standing rule. The court held that since Shafi established a sufficient possessory interest in certain luggage, he had standing to object.
[6] The United States Supreme Court three years later made clear that this reading of Jones was correct. Brown v. United States, 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973).
[7] The Florida Supreme Court, presented by certification, see Leveson v. State, 149 So.2d 80 (Fla. 3d DCA 1963), with the opportunity to address the question of whether the separate holding in Jones (that one legitimately on the premises had standing to complain of an illegal search of the premises) was binding upon the State of Florida, left the question unanswered. State v. Leveson, 151 So.2d 283 (Fla. 1963). Earlier, our court had accorded standing to the defendant. Leveson v. State, 138 So.2d 361 (Fla. 3d DCA 1962). Only one member of the court based standing on Jones. Judge Tillman Pearson, dissenting, stated that Florida courts were not bound to follow Jones' expansion of standing. Judge Carroll, specially concurring, agreed that the defendant, as lessee-occupant of the premises, had standing, but disagreed that that standing should be based on Jones:

"By making the point that Florida generally accepts as authority the interpretation of the United States Supreme Court as to the Fourth Amendment to the Federal Constitution and applies it in construing the equivalent § 22 of the Declaration of Rights of Florida [now Art. I, § 12, Fla. Const.], the majority opinion appears to hold or imply that the facts of this case require us to extend the law of this state to permit challenge of search by one of less standing with reference to the property than heretofore. I see no occasion in this case for any such extension of the law." 138 So.2d at 366.
[8] Before Simmons, if a defendant testified to his possessory interest in the goods seized or premises searched in support of his suppression motion, such testimony could be used against him at trial to establish his guilt on the charge of possession. Simmons prevents such use of his testimony. While the dissenters in Salvucci express concern that the self-incrimination dilemma still exists so long as the defendant's testimony at the suppression hearing can be used for impeachment purposes, the majority makes clear that that issue "more aptly relates to the proper breadth of the Simmons privilege, and not to the need for retaining automatic standing." 48 U.S.L.W. at 4884.
[9] Salvucci denied automatic standing to the respondent in that case, thus applying its overruling of Jones so as to affect Mr. Salvucci. We do the same to Norman. Unlike Salvucci, however, who relied on automatic standing and made no effort to establish a legitimate expectation of privacy in the premises, Norman disavowed any interest in the premises. A remand to the trial court to permit Norman an opportunity to establish this legitimate expectation of privacy is unnecessary. Compare United States v. Salvucci, supra; Priori v. State, 386 So.2d 618 (Fla. 1st DCA 1980).