392 So.2d 16 (1980)
David Alan COSTER, Ramon Rodriguez, Pedro Reyes and Mark Pridgeon, Appellants,
v.
The STATE of Florida, Appellee.
Nos. 79-1839 to 79-1841.
District Court of Appeal of Florida, Third District.
December 2, 1980.
Rehearing Denied January 22, 1981.
Bennett H. Brummer, Public Defender and Peter Raben and Bruce Alter, Asst. Public Defenders, for Mark Pridgeon.
Weiner, Robbins, Tunkey & Ross, and Ronald A. Dion, Miami, for Ramon Rodriguez and Pedro Reyes.
No appearance for David Alan Coster.
Jim Smith, Atty. Gen., and James H. Greason, Asst. Atty. Gen., for appellee.
Before SCHWARTZ and BASKIN, JJ., and PEARSON, TILLMAN (Ret.), Associate Judge.
BASKIN, Judge.
In consolidated appeals from their convictions and sentences, for drug related charges[1] entered upon pleas of no contest with reservations of their rights to appeal, defendants contest the trial court's denial of their motions to suppress the introduction into evidence of quaaludes seized without a warrant from defendant Coster's house.
*17 As grounds for suppressing the evidence, defendants Pridgeon, Rodriguez, and Reyes challenge the validity of the police officers' entry into a private dwelling without complying with Section 901.19(1), Florida Statutes (1977), the "knock and announce law". They contend that the officers failed to announce their authority and purpose. Defendants Rodriguez and Reyes also contend that the search was unreasonable because the officers had sufficient time but failed to obtain a warrant. Defendant Coster has adopted the arguments of his co-defendants.
The state responds, however, that all defendants except Coster, the owner of the residence, lacked standing to challenge the seizure of the quaaludes. Defendant Pridgeon counters that the question of standing was not presented to the trial court by the state and has therefore been waived.
Before addressing the merits of the standing question, we must first decide whether the state has waived its objection that defendants lacked standing to contest the illegal search of co-defendant Coster's house and the subsequent seizure of the bags of quaaludes.
In Rakas v. Illinois, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), the court decided:
"[T]he question is whether the challenged search or seizure violated the Fourth Amendment rights of a criminal defendant who seeks to exclude the evidence obtained during it... . [T]his aspect of the analysis belongs more properly under the heading of substantive Fourth Amendment doctrine than under the heading of standing ..." (Emphasis added)
Id. at 140, 99 S.Ct. at 429, 58 L.Ed.2d at 399.
The court explained its position further in Rawlings v. Kentucky, ___ U.S. ___, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980), and United States v. Salvucci, ___ U.S. ___, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980). In Rawlings, the Supreme Court stated:
Prior to Rakas, petitioner might have been given `standing' in such a case to challenge a `search' that netted those drugs but probably would have lost his claim on the merits. After Rakas, the two inquiries merge into one: whether governmental officials violated any legitimate expectation of privacy held by petitioner.
Rawlings v. Kentucky, supra ___ U.S. at ___, 100 S.Ct. at 2562, 65 L.Ed.2d at 643. See also United States v. Salvucci, supra ___ U.S. at ___, n. 4, 100 S.Ct. at 2550, n. 4, 65 L.Ed.2d at 625, n. 4. Compare Rawlings v. Kentucky, (Blackmun, J., concurring), supra ___ U.S. at ___, 100 S.Ct. at 2564, 65 L.Ed.2d at 646, where Justice Blackmun argued that a two-pronged method of reviewing Fourth Amendment claims remains.
Relying on these statements, we conclude that since the question of standing is no longer distinct from substantive Fourth Amendment issues, it was not waived by the state's failure to object on that ground. See also Norman v. State, 388 So.2d 613 (Fla. 3d DCA 1980).
We next consider whether defendants had interests or rights protected by the Fourth Amendment which were violated by an illegal search. We examine the facts.
Public Safety Department Detective Hodges told defendant Pridgeon he would buy 10,000 quaaludes. He went to the designated residence at 11:35 p.m. where he observed five men and 12 packages of quaaludes inside the house. After seeing the narcotics, he left, ostensibly to obtain money for the transaction. He then advised his backup units to proceed to the house and told them what they would find. The officers in the backup unit went to the house. A shout of "police" and banging were heard, and defendants Reyes and Rodriguez ran from the Florida room, dropping a brown paper bag. Two officers entered through the unlocked rear doors. Defendant Coster was found in the bathroom with several large bags of quaaludes and pills scattered on the floor. Defendant Pridgeon was discovered hiding under the bed. Twelve bags of quaaludes were retrieved from various places in the residence.
*18 A possessory interest in seized items no longer affords automatic standing to a defendant seeking to suppress the fruits of an unlawful search and seizure. United States v. Salvucci, supra. In Salvucci, the Supreme Court rejected the legitimately-on-premises standard as too broad a gauge by which to measure Fourth Amendment rights. See also Rawlings v. Kentucky, supra.
Because this court must inquire into the findings of the trial court with regard to whether defendants had a legitimate expectation of privacy in the area searched before we can arrive at a determination of the standing question, this case is not yet ripe for a decision on the correctness of the denial of the motion to suppress. No evidence was adduced regarding any proprietary interest or control over the premises by defendants Reyes, Rodriguez, or Pridgeon. It is, therefore, necessary that we relinquish this cause to the trial court for a determination of their rights to expectations of privacy. We also remand this cause as to defendant Coster, even though there was evidence that he owned the house because Salvucci does not necessarily establish an expectation of privacy by virtue of ownership.
We therefore remand this cause to enable the trial court to determine whether or not each defendant had a legitimate expectation of privacy in the area searched so as to afford him standing under the Salvucci doctrine. United States v. Salvucci, supra; Priori v. State, 386 So.2d 618 (Fla. 1st DCA 1980).
Reversed and remanded.
SCHWARTZ, Judge (dissenting in part).
I agree with the opinion of the court as it concerns the appellants Rodriguez, Reyes, and Pridgeon. As to Coster, I concur with the determination to remand for an evidentiary hearing, but I do so only because the record is unclear as to whether he actually owned the house where the search took place. A finding that he did, however, would, in my view, establish ipso facto his "reasonable expectation of privacy" as to the premises. Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969) clearly established the principle that the constitutionally-protected rights of the owner of a home are necessarily violated by an unlawful search of that residence, even when, as in Alderman itself (but unlike this case), he is not present at the time of the intrusion. See also, Rakas v. Illinois, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978) (adopting and following analysis of Alderman). I disagree with the majority's apparent conclusion that Salvucci, which dealt only with the rights of non-owners to challenge allegedly invalid searches, affected this doctrine in any way. See also, State v. Muzevsky, 388 So.2d 21 (Fla. 4th DCA 1980).
NOTES
[1] Defendants Ramon Rodriguez, Pedro Reyes, Mark Pridgeon, and David Coster were convicted of possession with intent to sell a controlled substance. They were sentenced to five years probation with four months incarceration as a condition for Rodriguez, Reyes, and Pridgeon, and six months incarceration for defendant Coster.