PER CURIAM.
I. M., a juvenile appeals from the trial court’s denial of his motion to suppress as evidence cocaine found in one of his shoes as the result of a search by a customs officer at Miami International Airport. We affirm.
Appellant arrived at the airport on an international flight. He failed to pass Immigration when an officer discovered that the juvenile had arrived in the United States with a false Venezuelan passport. As the immigration officer escorted appellant into the customs area to pick up his luggage for the purpose of checking it for some proof of identification, a customs officer observed that appellant’s shoes were very stiff and did not bend as he walked. *827 Within the past ten years, the officer had arrested eight to ten persons who had concealed contraband in the type of shoe worn by appellant. When appellant returned to the customs area some forty-five minutes later for customs inspection, the officer identified himself as a customs officer and asked appellant to come into a secondary examination room. Upon request by the officer, appellant removed his shoes. The officer then drilled a hole into one of the shoes. White powder, which proved to be cocaine, fell out and appellant was placed under arrest.
Border searches are permissible when there is reasonable suspicion that merchandise was introduced into the United States contrary to law, 19 U.S.C.A. § 482 (1980)[1] and all persons coming into the United States from foreign countries are subject to detention and search by customs officers, 19 U.S.C.A. § 1582 (1980).[2] We reject appellant’s argument that the above statutes do not apply and he could not be searched under the border search exception to the probable cause requirement because appellant had not cleared the customs area, and, therefore, had not technically “entered” the United States.
Although it is settled law that the customs area at an airport is the border for arriving international passengers, Almeida-Sanchez v. United States, 413 U.S. 266, 273, 93 S.Ct. 2535, 2539, 37 L.Ed.2d 596, 602-3 (1973); United States v. Klein, 592 F.2d 909 (5th Cir. 1979); United States v. Himmelwright, 551 F.2d 991 (5th Cir. 1977), cert. denied, 434 U.S. 902, 98 S.Ct. 298, 54 L.Ed.2d 189 (1977), these cases do not identify the above statutes as authorizing the search. In United States v. Chiarito, 507 F.2d 1098 (5th Cir. 1975), cert. denied, 423 U.S. 824, 96 S.Ct. 38, 46 L.Ed.2d 40 (1975), however, the court found that 19 U.S.C.A. § 482 applies to searches of persons entering the United States Customs Inspection area at Miami International Airport on an international flight. Accord, People v. Furey, 248 N.Y.S.2d 460, 42 Misc. 579 (1964)(applying 19 U.S.C.A. §§ 482 and 1582 to customs search at airport). A reading of 19 U.S.C.A. § 482 shows that customs officers are authorized to search within as well as without their respective districts and 19 U.S.C.A. § 1582 authorizes searches for all persons coming into the United States. We find nothing in these statutes which requires technical entry. Accordingly, we find that it is the physical presence in the United States and not a “technical entry” that triggers the applicability of the border search statutes 19 U.S.C.A. §§ 482 and 1582.
Having determined that a search was permissible under the border search statutes, we must now decide whether this particular search was constitutionally permissible under the Fourth Amendment to the United States Constitution.
If a border search is routine, a warrantless search may be performed under 19 U.S.C.A. § 1582, without any probable cause or reasonable suspicion. See State v. Smith, 399 So.2d 22 (Fla. 3d DCA 1981) (routine baggage search; adopting 5th Circuit test for Florida). A search of a shoe, in a case nearly identical to appellant’s, was found to be a routine border search justifiable without any degree of suspicion in United States v. Nieves, 609 F.2d 642 (2d Cir. 1979), cert. denied, sub. nom. Figueroa v. United States, 444 U.S. 1085, 100 S.Ct. 1044, 62 L.Ed.2d 771 (1980). We do not here need *828 to decide whether under Florida law the search of appellant’s shoe was a routine search because under the circumstances of this case the stricter test of “reasonable suspicion” is met.[3] The customs officer’s past experience with shoes containing contraband and his observation that appellant wore shoes of the same type and was walking stiffly were sufficient to raise that official’s reasonable suspicion that appellant’s shoes contained contraband. Cf. United States v. Cortez, - U.S. -, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981) (agent’s experience as Border Patrol agent may be considered in determining whether officer could reasonably surmise vehicle was engaged in criminal activity). We find that, based on the customs officer’s prior experience he had reasonable suspicion to search appellant’s shoe.
Affirmed.

. 19 U.S.C.A. § 482 (1980) provides:
Any of the officers or persons authorized to board or search vessels may stop, search, and examine, as well without as within their respective districts, any vehicle, beast, or person, on which or whom he or they shall suspect there is merchandise which is subject to duty, or shall have been introduced into the United States in any manner contrary to law, whether by the person in possession or charge, or by, in, or upon such vehicle or beast, or otherwise, and to search any trunk or envelope, wherever found, in which he may have a reasonable cause to suspect there is merchandise which was imported contrary to law....

. 19 U.S.C.A. § 1582 (1980) provides:
The Secretary of the Treasury may prescribe regulations for the search of persons and baggage and he is authorized to employ female inspectors for the examination and search of persons of their own sex; and all persons coming into the United States from foreign countries shall be liable to detention and search by authorized officers or agents of the Government under such regulations.

. We adopt the 5th Circuit test of “reasonable suspicion” to determine the validity of border searches which are more than routine. See United States v. Klein, supra. Although the circuits have adopted different tests for determining whether a particular border search is constitutionally permissible, the circuits agree that “reasonableness in the Fourth Amendment sense always depends upon a balance which must be struck between. .. the level of official intrusion into individual privacy... and the public interest to be served by such an intrusion.” United States v. Himmelwright, supra at 994. Compare Himmelwright, supra, (5th Circuit applies a single flexible “real suspicion” test), with United States v. Dorsey, 641 F.2d 1213 (7th Cir. 1981) (rejecting any labeling of requisite level of suspicion and applying direct balancing test); United States v. Carter, 563 F.2d 1360, 1361 (9th Cir. 1977) (“real suspicion” to search artificial leg) and Rivas v. United States, 368 F.2d 703 (9th Cir. 1966), cert. denied, 386 U.S. 945, 87 S.Ct. 980, 17 L.Ed.2d 875 (1967) (“clear indication” to search body cavities).