407 So.2d 321 (1981)
Zeinida MORALES, Oscar Blanco, Livio Blanco and Humberto Martinez, Appellants,
v.
The STATE of Florida, Appellee.
Nos. 80-248, 80-249.
District Court of Appeal of Florida, Third District.
December 15, 1981.
*323 Greene & Cooper and Sharon L. Wolfe, Carol King Guralnick, Miami, for appellants.
Jim Smith, Atty. Gen., and Steven R. Jacob, Asst. Atty. Gen., for appellee.
Before HUBBART, C.J., and BASKIN and DANIEL S. PEARSON, JJ.
HUBBART, Chief Judge.
The central question presented for review is whether a warrantless search of the hold of a person's sea-going vessel and the subsequent seizure of marijuana contained therein conducted by U.S. Customs officials in the territorial waters of the United States [i.e., within the seas extending three nautical miles from the U.S. coastline], after the said vessel has recently entered such waters from the high seas [i.e., the seas outside the three mile limit from the U.S. coastline], constitutes an unreasonable search and seizure of the vessel in violation of the said person's rights guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution and Article I, Section 12 of the Florida Constitution. We hold that such a warrantless search does not violate said person's rights guaranteed by the above constitutional provisions as the subject search and seizure constitutes a reasonable border search; this result is not changed by the fact that U.S. Customs officials have: (a) no articulable suspicion that the occupants of the said vessel have been involved in criminal activity; and (b) no probable cause to believe that the said vessel contains contraband or other evidence of crime. We, accordingly, affirm the judgments and convictions under review by this appeal.

I
The facts pertinent to the above issue are as follows. On June 8, 1979, U.S. Customs officials received information from an unknown source that a vessel located in Bahamian waters along with two smaller vessels were about to bring a shipment of marijuana into the United States. A U.S. Customs air patrol plane was immediately dispatched *324 to go to Orange Cay, south of Bimini, to look for the subject vessels. Upon the pilot's arrival, three vessels were observed leaving the area, although the vessels did not match the descriptions previously given. The Customs pilot nonetheless followed these vessels by air from that point until the vessels reached a lighthouse point off Key Biscayne, Florida, well within three nautical miles of the Florida coastline.
Meanwhile, U.S. Customs officials located in nearby vessels off the Florida coast, were notified by the air patrol of the exact location of two of the surveyed vessels as they entered U.S. territorial waters. Both of these vessels were subsequently stopped, boarded and searched by U.S. Customs officials, together with Dade County Public Safety Department officers, in U.S. territorial waters near Miami, Florida. The first vessel was stopped and searched in Biscayne Bay, near the Rickenbacker Causeway by the Seaquarium. The second vessel was stopped and searched 1/4 mile off Virginia Key, near Bear Cut. In each instance, U.S. Customs officials boarded the vessels, lifted up the hatch on the vessel and seized a large quantity of marijuana in the hold. The defendants Zeinida Morales and Oscar Blanco were on the first vessel, and the defendants Livio Blanco and Humberto Martinez were on the second vessel. They were all placed under arrest after the discovery of the subject marijuana.
The defendants were subsequently charged in a two-count information with: (1) possession of marijuana with intent to sell [§ 893.13(1)(a), Fla. Stat. (1979)]; and (2) trafficking in marijuana [§ 893.135, Fla. Stat. (1979)] in the Circuit Court for the Eleventh Judicial Circuit of Florida. The trial court dismissed the second count of the information and the state has taken no appeal therefrom. The defendants filed timely pre-trial motions to suppress the above marijuana on unreasonable search and seizure grounds. No contention was made below by the state that the defendants lacked standing to bring these motions. The trial court heard and denied the motions after reviewing by stipulation the prediscovery depositions taken in this case in which the above facts were revealed.
The defendants subsequently entered nolo contendere pleas to the crime of possession of marijuana with intent to sell, specifically reserving for review the denial of the motions to suppress. The defendants appeal; we have jurisdiction to entertain the appeal, and the authority to reach the issue preserved for review as the issue preserved is clearly dispositive of the case. Brown v. State, 376 So.2d 382 (Fla. 1979).

II
The Fourth Amendment to the United States Constitution, as made enforceable against the states through the due process clause of the Fourteenth Amendment,[1] provides that: "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated... ." Article I, Section 12 of the Florida Constitution contains a virtually identical provision.[2]
Two requirements must necessarily be met before any person may successfully claim that his rights guaranteed by the above constitutional provisions have been violated. First, there must be a "search[] and seizure[]" of that individual's "person[], house[], papers" or "effects" conducted by an agent of the government; stated differently, there must be an official invasion of that individual's reasonable expectation of privacy. Katz v. United *325 States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); Norman v. State, 379 So.2d 643 (Fla. 1980); Elson v. State, 337 So.2d 959, 963 (Fla. 1976); State v. Oliver, 368 So.2d 1331, 1335 (Fla. 3d DCA 1979), cert. dismissed, 383 So.2d 1200 (Fla. 1980). Second, the search and seizure in question, must be "unreasonable," as not all searches and seizures are proscribed by the above constitutional provisions, but only those which are "unreasonable," Elkins v. United States, 364 U.S. 206, 222, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960); Chacon v. State, 102 So.2d 578, 588 (Fla. 1958); Brown v. State, 46 So.2d 479 (Fla. 1950); stated differently, the official invasion of one's reasonable expectation of privacy must be an "unreasonable" invasion.
Both the foregoing requirements are separate and distinct and both must be met before there can be any violation of an individual's rights guaranteed by the above constitutional provisions. Rawlings v. Kentucky, 448 U.S. 98, 112, 100 S.Ct. 2556, 2565, 65 L.Ed.2d 633 (1980) (Blackmun, J., concurring). Moreover, any evidence secured in violation of either of the above constitutional provisions is inadmissible in evidence in a Florida court against the person whose search and seizure rights were violated. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); Gildrie v. State, 94 Fla. 134, 113 So. 704 (1927); Fla. Const. art. I, § 12.
Finally, it should be noted that the person who asserts his rights were violated under the above constitutional provisions  the defendant in a criminal case  has the burden of alleging and, if challenged, of establishing that the first Fourth Amendment requirement has been met, to wit: that there has been a governmental search and seizure of that individual's person, house, papers or effects, or stated differently, that there has been an official invasion of that individual's reasonable expectation of privacy.[3] The same individual  the defendant  also has the burden of establishing the second Fourth Amendment requirement, to wit: that the search and seizure in question was unreasonable. Rakas v. Illinois, supra. The latter burden, however is satisfied upon proof, as here, that the search and seizure in question took place without a search warrant; the burden of proof thereafter shifts to the state to establish that an exception to the search warrant requirement was applicable in the subject case and that the search and seizure was, in fact, a reasonable one. Raffield v. State, 351 So.2d 945, 947 (Fla. 1977); Andress v. State, 351 So.2d 350 (Fla. 4th DCA 1977); State v. Hinton, 305 So.2d 804 (Fla. 4th DCA 1975); Bicking v. State, 293 So.2d 385 (Fla. 1st DCA 1974); State v. Lyons, 293 So.2d 391, 393 (Fla. 2d DCA 1974); Mann v. State, 292 So.2d 432 (Fla. 2d DCA 1974).

A
Ordinarily, we would have no problem in concluding on this record that the defendants failed to establish the first Fourth Amendment requirement in this case. Although clearly a governmental search and seizure took place in this case, there is no showing that the search and seizure in question was directed against the defendants' "person[], house[], papers" or "effects" as required by the Fourth Amendment and Article I, Section 12 of the Florida Constitution; stated differently, there is no showing that the defendants' reasonable expectation of privacy was invaded by the governmental search and seizure in this case.
*326 The sole showing of standing on this record is the defendants' presence on the subject vessels wherein the search occurred and the subject marijuana was seized by U.S. Customs. No evidence was adduced that the defendants had a reasonable expectation of privacy in the vessel premises searched, particularly the hold, as for example, that they owned or leased the subject vessels or otherwise had an unrestricted right of occupancy or custody or control of said vessels;[4] nor was any evidence adduced that the defendants had a reasonable expectation of privacy in the marijuana seized, as for example, that they actually or constructively possessed the subject marijuana, whether lawfully or unlawfully. Rakas v. Illinois, supra; United States v. Jeffers, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59 (1951); Annot., 78 A.L.R.2d 246, 248-49 (1961); Annot., 96 L.Ed. 66 (1952).[5] Absent such a showing, the first Fourth Amendment requirement on standing was not established on this record.
We cannot, however, dispose of the case on that ground. The state did not challenge in the trial court the defendants' standing to contest the subject search and seizure, and, accordingly, the defendants' burden of proof on this issue was not triggered below, Jones v. United States, 362 U.S. 257, 261, 80 S.Ct. 725, 731, 4 L.Ed.2d 697 (1960); instead, the state challenges the defendants' standing herein for the first time on appeal. Although the challenge does not come too late,[6] we are precluded by law from deciding the issue in the state's favor without first remanding the cause to the trial court for the purpose of developing a complete record on the standing issue  the theory being that the issue was not fully litigated below, absent a proper state challenge, and that the defendants may have standing evidence which they were lulled into not presenting below and could present upon remand. Combs v. United States, 408 U.S. 224, 92 S.Ct. 2284, 33 L.Ed.2d 308 (1972); State v. Hutchinson, 404 So.2d 361 (Fla. 2d DCA 1981); St. John v. State, 400 So.2d 779 (Fla. 1st DCA 1981); Coster v. State, 392 So.2d 16 (Fla. 3d DCA 1981).
*327 It would seem, then, that we are left in this case with no alternative but to remand the cause to the trial court for the purpose of developing a complete record on the standing issue. Upon further reflection, however, we deem such a remand to be unnecessary given our ultimate conclusion that the search and seizure in question was, in any event, a reasonable one. We, therefore, decline to remand the cause for further proceedings, but will instead assume without deciding, for purposes of this appeal, that the defendants herein had standing to contest the instant search and seizure. We, accordingly, move on to a consideration of the second Fourth Amendment requirement in this case.

B
For the reasons which follow, we conclude that the second Fourth Amendment requirement discussed above was not met in this case. The search in question, although warrantless and thus presumptively unreasonable, falls within one of the exceptions to the search warrant requirement rule to wit: the border search exception. The search, therefore, cannot be condemned as unreasonable within the meaning of our federal or state constitutional provisions on search and seizure, and the motions to suppress, on that ground alone, were properly denied by the trial court.

1
The law is well-settled that a search and seizure conducted by state officials is presumptively unreasonable under the Fourth and Fourteenth Amendments to the United States Constitution and Article I, Section 12 of the Florida Constitution when conducted without a search warrant, subject only to certain specifically established and well-delineated exceptions justified by absolute necessity. Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); Norman v. State, 379 So.2d 643 (Fla. 1980); Pomerantz v. State, 372 So.2d 104, 108 (Fla. 3d DCA 1979). The state has the burden of proving that such an exception applies in a given case. Norman v. State, supra; Taylor v. State, 355 So.2d 180, 183 (Fla. 3d DCA 1978), cert. denied, 361 So.2d 835 (Fla. 1978).
One of the most time-honored exceptions to the search warrant requirement rule is the reasonable border search. The law is well-settled that U.S. Customs officials may conduct a routine, warrantless search of all travelers as they enter into the United States at the international border of this country or its functional equivalent. A routine border search may be made of the traveler's person, suitcase, vehicle, vessel or other belongings as he or she enters with same into the territorial limits of this country. No showing of probable cause or reasonable suspicion to make the search is required to invoke this exception as the justification for the search rests, not on a prior evidentiary showing of wrongdoing, but on the undisputed right of a sovereign nation to control who and what may enter its territory. Only where the search at the border is not routine but is unduly intrusive  such as body cavity search  is a showing of reasonable suspicion required to make such a search. Finally, to invoke the border search exception, there must be a showing that the traveler in question has recently crossed an international border of the United States. United States v. Ramsey, 431 U.S. 606, 616-19, 97 S.Ct. 1972, 1978-80, 52 L.Ed.2d 617 (1977); Carroll v. United States, 267 U.S. 132, 153-54, 45 S.Ct. 280, 285-86, 69 L.Ed. 543 (1925), adopted in toto by § 933.19, Fla. Stat. (1979); Almeida-Sanchez v. United States, 413 U.S. 266, 272-75, 93 S.Ct. 2535, 2539-40, 37 L.Ed.2d 596 (1973); I.M. v. State, 400 So.2d 826 (Fla. 3d DCA 1981) and cases collected; State v. Smith, 399 So.2d 22 (Fla. 3d DCA 1981) and cases collected; 19 U.S.C. §§ 1581(a), 1582 (1980).
A traveler crosses the international border of the United States by vessel at sea when he crosses from the high seas into the United States territorial sea at a point three nautical miles from the U.S. coast; stated differently, the three mile limit, as thus defined, represents the international border of the United States for border search purposes. United States v. Hill, 430 F.2d 129, 131 (5th Cir.1970). A border *328 search of such a vessel, however, need not take place at the precise point of the three mile limit as it would be entirely impracticable, short of a full naval blockade of the coastline, to do so. It is, therefore, permissible for the U.S. Customs officials to conduct a border search of a vessel at any point within the United States territorial sea [i.e., within the three mile limit from the U.S. coastline] or within U.S. inland waters [i.e., the ports, harbors, bays, river mouths, and adjacent parts of the sea inside the U.S. coastline]  so long as, in each instance, there is a sufficient showing that the vessel in question has recently crossed the U.S. border, as thus defined, from the high seas. United States v. Guillen-Linares, 643 F.2d 1054, 1056 (5th Cir.1981); United States v. D'Antignac, 628 F.2d 428, 433 n. 7 (5th Cir.1980), cert. denied, 450 U.S. 967, 101 S.Ct. 1485, 67 L.Ed.2d 617 (1981); United States v. Serrano, 607 F.2d 1145 (5th Cir.), cert. denied, 445 U.S. 965, 100 S.Ct. 1655, 64 L.Ed.2d 241 (1980); United States v. Warren, 578 F.2d 1058, 1064 n. 4 (5th Cir.1978); United States v. Ingham, 502 F.2d 1287 (5th Cir.1974); Earnest v. State, 293 So.2d 111 (Fla. 1st DCA 1974); Carmichael, "At Sea with the Fourth Amendment," 32 U.Miami L.Rev. 51, 56-57 (1977).

2
In the instant case, we have no problem in concluding that a reasonable border search took place in this case. It is clear beyond dispute that the defendants, while aboard the subject vessels, crossed the three mile limit into the territorial waters of the United States from the high seas and thereby crossed this country's international border. A U.S. Customs official followed the subject vessels by air from a point in the Caribbean sea near Bimini until the vessels crossed into the territorial waters of the United States three nautical miles off the Florida coast. Shortly thereafter, other U.S. Customs officials intercepted the subject vessels well within the three mile limit wherein a routine border search was conducted of the hold of each of the two subject vessels herein. It is true, as the defendants contend, that there was no probable cause or reasonable suspicion shown for the instant search, but, then, none was required under the established law for this admittedly routine border search.
In this connection, we think it worth mentioning that 19 U.S.C. § 1581 (a) (1980),[7] despite its broad language, does not authorize  contrary to the state's contention  U.S. Customs officials to conduct random searches of all vessels found within U.S. customs waters [i.e., the seas within four leagues or 12 nautical miles of the U.S. coastline, 19 U.S.C. § 1401(j) (1981)] or found anywhere else in the United States. Indeed, the statute has been held "circumscribed by the reasonableness requirement of the Fourth Amendment," United States v. D'Antignac, 628 F.2d 428, 432 (5th Cir.1980), as "no Act of Congress can authorize a violation of the Constitution." Almeida-Sanchez v. United States, 413 U.S. at 272, 93 S.Ct. at 2539. As such, it has been held that U.S. Customs officials are authorized by the above statute to stop and board any vessel within U.S. customs waters for the administrative purpose of making a routine vessel document check, but that any subsequent search of the vessel must be based on probable cause, valid consent, a border search or some other indicia of Fourth Amendment reasonableness. United States v. Freeman, 579 F.2d 942 (5th Cir.1978);[8] *329 Earnest v. State, 293 So.2d 111 (Fla. 1st DCA 1974). The statute does not, and constitutionally cannot, authorize, without more, a general search of all vessels in U.S. customs waters or anywhere else in the United States. See Hill v. State, 238 So.2d 608 (Fla. 1970). Indeed, it has been held that 19 U.S.C. § 1581(a) (1980), does not authorize U.S. Customs officials to stop and board a vessel for a vessel document check, much less authorize a search of the vessel, when the vessel is within the inland waters of the United States [i.e., the ports, harbors, bays, river mouths, and adjacent parts of the sea inside the U.S. coastline], and that such a vessel may only be stopped and boarded on a showing of articulable suspicion of criminal activity or a recent border crossing. United States v. Guillen-Linares, 643 F.2d 1054, 1056 (5th Cir.1981); United States v. D'Antignac, 628 F.2d 428, 433 (5th Cir.1980), cert. denied, 450 U.S. 967, 101 S.Ct. 1485, 67 L.Ed.2d 617 (1981); United States v. Serrano, 607 F.2d 1145 at 1147-48 (5th Cir.), cert. denied, 445 U.S. 965, 100 S.Ct. 1655, 64 L.Ed.2d 241 (1980). In each instance, the courts have read the Fourth Amendment requirement of reasonableness into the statute and have never applied its literal terms as the state now urges us to do.
Moreover, such plenary search authority as asserted herein would, in our view, fly in the face of the historical purpose of the Fourth Amendment which was adopted to end the abuse of general exploratory searches of vessels and other private property by British customs officials in the American Colonies under the general writs of assistance regime  an abuse which was one of the primary causes of the American Revolution. See generally State v. Shaktman, 389 So.2d 1045, 1047-54 (Fla. 3d DCA 1980) (Hubbart, J., dissenting), and authorities collected. Indeed, it would be most ironic if U.S. Customs officials should somehow have plenary search authority over every vessel in the United States when this country fought a revolution, in part, over a similar assertion of power by British customs officials and later adopted a Fourth Amendment which was designed to end precisely such an abuse. As such, 19 U.S.C. § 1581(a) (1980), authorizes the vessel searches in the instant case, not because U.S. Customs officials have some kind of plenary search power over all vessels in U.S. Customs waters or anywhere else in the United States, but because the subject searches herein represent reasonable border searches within the meaning of the Fourth Amendment.

3
Finally, it should be noted that since the subject marijuana was lawfully seized by officers of the U.S. Customs pursuant to a reasonable border search, the evidence was clearly admissible in either the federal or the state courts. The fact that the federal officials in this case declined to prosecute the defendants in the federal courts and turned the evidence over "on a silver platter" to local police officials for use in a Florida state prosecution cannot change this result. See e.g., State v. Smith, 399 So.2d 22 (Fla. 3d DCA 1981).

III
For the above reasons, it is our view that the trial court was eminently correct in denying the motions to suppress in this case. The search and seizure conducted by U.S. Customs officials in this cause was a reasonable one within the meaning of the Fourth and Fourteenth Amendments to the United States Constitution and Article I, Section 12 of the Florida Constitution. Such evidence was therefore admissible in a Florida state prosecution against the presumed victims of said search. The judgments of conviction and sentences under review, are, accordingly,
Affirmed.
NOTES
[1] Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); Wolf v. Colorado, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949).
[2] Article I, Section 12 of the Florida Constitution also contains a provision protecting the people against unreasonable electronic eaves-dropping. This constitutional provision reads in relevant part as follows:

"The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures, and against the unreasonable interception of private communications by any means, shall not be violated."
[3] "Ordinarily, then, it is entirely proper to require of one who seeks to challenge the legality of a search as the basis for suppressing relevant evidence that he allege, and if the allegation be disputed that he establish, that he himself was the victim of an invasion of privacy." [emphasis added] Jones v. United States, 362 U.S. 257, 261, 80 S.Ct. 725, 731, 4 L.Ed.2d 697, 702 (1960), quoted with approval in Alderman v. United States, 394 U.S. 165, 173, 89 S.Ct. 961, 966, 22 L.Ed.2d 176 (1969).

"The proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure... . The prosecutor's argument [made in the trial court challenging the accused's standing] gave petitioners notice that they were to be put to their proof on any issue as to which they had the burden... ." Rakas v. Illinois, 439 U.S. 128, 130 n. 1, 99 S.Ct. 421, 423 n. 1, 58 L.Ed.2d 387 (1978).
[4] "Legitimation of expectations of privacy by law must have a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society. One of the main rights attaching to property is the right to exclude others, see W. BLACKSTONE, COMMENTARIES, BOOK 1, ch. 1, and one who owns or lawfully possesses or controls property will in all likelihood have a legitimate expectation of privacy by virtue of this right to exclude." Rakas v. Illinois, 439 U.S. 128, 143 n. 12, 99 S.Ct. 421, 430 n. 12, 58 L.Ed.2d 387 (1978).

"[W]here the premises searched is the dwelling or, is owned or rented by, or is in the possession of the accused, he has standing to attack the search. As employed in this connection we understand `possession' to have reference to an unrestricted right of occupancy or custody and control of the premises as distinguished from occasional presence on the premises as a mere guest or invitee." State v. Leveson, 151 So.2d 283, 285 (Fla. 1963).
[5] It should be noted, parenthetically, that a defendant no longer has automatic standing to attack the search and seizure of evidence which he or she is criminally charged with possessing, but must demonstrate his or her standing to contest such a search on the same basis as any other defendant. United States v. Salvucci, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980); Norman v. State, 388 So.2d 613 (Fla. 3d DCA 1980). A defendant who lacks standing to contest the search and seizure of evidence which he or she is criminally charged with possessing, however, may be entitled to a judgment of acquittal at trial on the contraband criminal charge for failure of the state to prove that such defendant possessed the said contraband with requisite scienter. See e.g., Ramirez v. State, 386 So.2d 584 (Fla. 3d DCA), pet. for rev. denied, 392 So.2d 1379 (Fla. 1980). The defendants in this cause have not raised such a claim upon this appeal and, indeed, effectively waived same by entering their nolo contendere pleas below.
[6] We reject the defendants' contrary contention as being unsupported by the existing case law. It is true, however, that if, unlike this case, the state had not challenged the defendants' standing at either the trial or the appellate level  or had waited to raise the issue for the first time before the United States Supreme Court  it would have waived the standing issue for appellate review. Steagald v. United States, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981); United States v. Ramsey, 431 U.S. 606, 611 n. 7, 97 S.Ct. 1972, 1976 n. 7, 52 L.Ed.2d 617 (1977); United States v. Santana, 427 U.S. 38, 41 n. 2, 96 S.Ct. 2406, 2409 n. 2, 49 L.Ed.2d 300 (1976).
[7] officer of the customs may at any time go on board of any vessel or vehicle at any place in the United States or within the customs waters or, as he may be authorized, within a customs-enforcement area established under the Anti-Smuggling Act, or at any authorized place, without as well as within his district, and examine the manifest and other documents and papers and examine, inspect and search the vessel or vehicle and every part thereof and any person, trunk, package, or cargo on board, and to this end may hail and stop such vessel or vehicle, and use all necessary force to compel compliance." 19 U.S.C. § 1581 (a) (1980).
[8] We reject the state's reading of Freeman to grant plenary authority under § 1581(a) to Customs officials to conduct full-blown searches of vessels in U.S. customs waters. Although Freeman held that § 1581(a) enabled customs officials to stop and board such vessels, it authorized same for the limited administrative purpose of a vessel document inspection. Once on board the vessel in Freeman, the officials' right to search was based on traditional exceptions to the Fourth Amendment search warrant requirement, to wit: the plain view sighting of hidden passengers, exigent circumstances, and probable cause. True, the court used some broad language in its opinion, but at no time held that § 1581(a) in and of itself authorized the searches of the vessels involved in that case.