FRANK D. UPCHURCH, Jr., Judge.
Appellants Chippas, Boykin, Buchanan and Tharp appeal their convictions for conspiracy to traffic in excess of 100 pounds of cannabis and trafficking in excess of 100 pounds of cannabis. While Chippas and Tharp were tried separately, the convictions here arise from the same events and essentially involve the same issues.
*539 The state basically sought to prove that Chippas was the organizer and financier of an operation, in which Boykin, Buchanan and Tharp participated, to fly a plane load of marijuana from Colombia, Smith America to an airstrip in Osceola County. Chip-pas had an ownership interest in certain ranch land near Kenansville, in Osceola County, on which the airstrip was located.
The evidence below established that láw enforcement officials received information in February, 1980, that Chippas and his alleged co-conspirators were engaged in suspicious activities at a Cypress Gardens motel. A Polk County sheriff’s investigator, Kendrick, testified that on February 18, 1980, he overheard a man later identified as Hilton Hobbs, talking on a public telephone about a plane and “going south.” Kendrick spoke with Hobbs who said he was a pilot.
On February 21, 1980, Kendrick saw Tharp and Chippas arrive separately at the motel. Kendrick observed Tharp enter Hobb’s room. He also saw Chippas, Buchanan and Boykin loitering on the balcony outside. Boykin subsequently obtained a room at the motel which was paid for by Chippas.[1]
On February 22, 1980, Hobbs and Tharp drove to a private aviation firm in Osceola County. The following day, Boykin, Buchanan and Chippas drove to a motel at Yeehaw Junction, near the Kenansville airstrip.
Meanwhile, law enforcement officials, believing that a drug importation scheme might be in the works, placed the Kenans-ville airstrip under surveillance. The ranch on which the airstrip was located was surrounded with barb wire fencing and thick shrubbery.
On the evening of February 23, Buchanan and Boykin drove to a gate which led to the airstrip and parked. Also present at an abandoned house near the strip was Tharp. The night was foggy and no plane .landed. The next morning, after Buchanan and Boykin had visited the airstrip, a plane landed and law enforcement officials converged on the area. A state game warden who resided nearby cut a chain to one of the gates to permit entry to the airstrip property.
When officers entered the airplane, they detected marijuana residue on the carpet. A pick-up truck loaded with what appeared to be numerous wrapped bales was observed near the plane. The officers could smell marijuana emanating from the bales and indeed one of the bales was broken and marijuana was observed. This evidence was seized by the officers. Hobbs was arrested as he walked from the plane and aerial maps were taken from him. A fingerprint from Chippas was later found to be on one of the maps.
Law enforcement officials who had placed the Yeehaw Junction motel under surveillance observed Chippas and Buchanan talking together about fifteen minutes after the plane had landed. Buchanan then left after receiving what one officer described as hand signals from Chippas. Chippas was arrested as he left the motel a short time later.
At Chippas’ trial, Hobbs testified, stating that Chippas offered him $30,000 to pilot the airplane carrying marijuana from Colombia to his private airstrip at Kenansville.
Appellants’ initial point is that the trial court erred in denying their motions to suppress the marijuana found in the back of the pick-up truck. The attack on the validi- . ty of the search is two-fold: first, that the warrantless entry of the airstrip property was illegal and second, that the search of the wrapped bales[2] discovered in the pickup truck was impermissible. We hold that only Chippas, who owned the airstrip property and Tharp, who owned the pick-up truck, have standing to argue these points. See Rawlings v. Kentucky, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980); United States v. Salvucci, 448 U.S. 83, 100 S.Ct. *540 2547, 65 L.Ed.2d 619 (1980); Coster v. State, 392 So.2d 16 (Fla. 3d DCA 1980).[3]
The trial court found that:
There was not probable cause based upon the totality of the circumstances for the officers to believe that a crime was being committed until the airplane, the Quee-naire, landed on the property in question at approximately 11:00 a.m. on Sunday, February 24, 1980. In other words, the officers then had probable cause to believe that a crime was being committed, to-wit the bringing onto the premises and possession of a load of contraband or marijuana pursuant to an alleged conspiracy.
The court further held,
On February 24, 1980, at 11:00 a.m., the officers had probable cause to enter the property and there were exigent circumstances because the airplane had just landed and there was not sufficient time to secure a warrant because of the mobility of the plane.
In Adoue v. State, 408 So.2d 567 (Fla.1982), the Florida Supreme Court recognized that the “automobile exception” of Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970) and Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed.2d 543 (1925), applies to airplanes as well. In Carroll, the Supreme Court held that automobiles or other mobile vehicles may be searched without a warrant where an officer, authorized to search, has probable cause for believing that the vehicle is carrying contraband. See also Guin v. City of Riviera Beach, 388 So.2d 604 (Fla. 4th DCA 1980) (where officers have probable cause to believe a crime is in progress and there is no reasonable opportunity to obtain a warrant, exigent circumstances exist and justify a warrantless entry and search).
The record here amply supports the trial court’s finding that the officers first had probable cause to believe that a crime was in progress when they saw the plane landing and since the plane containing the contraband could have taken off at any moment, exigent circumstances existed which justified the warrantless entry onto the property.
As to the search of the marijuana bales, even assuming that the bales were opened by the police,[4] we believe that United States v. Ross, - U.S. - , 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), disposes of this issue. In Ross, the Supreme Court held that where officers have probable cause to believe that a vehicle contains evidence of a crime, the officers may search every part of the vehicle and its contents, including all containers and packages that may conceal the object of the search. Here there is no doubt that the police had probable cause to believe that the pick-up truck contained evidence of a crime. Officers, who observed marijuana residue in the airplane, could smell marijuana emanating from the bales and on the truck. One of the bales was broken and marijuana was observed. In addition, a custom’s agent at the scene had seen approximately 500 tons of marijuana previously, some of which was packaged in identical-type bags.
Appellants next challenge the sufficiency of the evidence to support their convictions. We find that there is substantial, competent evidence in the record to support each of the convictions. McIlwain v. State, 402 So.2d 1194 (Fla. 5th DCA 1981).[5]
*541 As to the sentences imposed, the record reveals that Boykin and Buchanan were both given split sentences which violate Villery v. Florida Parole and Probation Commission, 396 So.2d 1107 (Fla.1981).[6] Therefore, their sentences are vacated and the causes in Cases No. 81-11 and 81-213 are remanded for resentencing. See Bentley v. State, 411 So.2d 1361 (Fla. 5th DCA 1982). In all other respects, the convictions and sentences in these cases are affirmed.
Convictions AFFIRMED, sentences VACATED and causes REMANDED in Cases No. 81-11 and 81-213 for re-sentencing.
ORFINGER, C.J., and COWART, J., concur.

. Chippas referred to Boykin as a business partner when arranging for the room.

. The bales were wrapped in opaque nylon bags.

. Boykin and Buchanan neither owned nor were on the property when the police arrived and both of them denied any proprietary interest in the bales of marijuana.

. There is nothing in the record here to establish that the police ever opened any of the bales.

. Chippas also challenges the constitutionality of section 893.135, Florida Statutes (1979), which imposes a mandatory minimum term of imprisonment (in this case of three years) which must be imposed unless the defendant “provides substantial assistance in the identification, arrest or conviction of any of his accomplices, accessories, co-conspirators, or principals.” The constitutionality of this section has been upheld in numerous recent cases, including State v. Newman, 405 So.2d 971 (Fla.1981); State v. Werner, 402 So.2d 386 (Fla.1981); and State v. Benitez, 395 So.2d 514 (Fla.1981).

. Boykin was sentenced on the trafficking count to a “30 year split sentence with six years [imprisonment] followed by 24 years probation” and was given 15 years on the conspiracy count, with 5 years to be served in jail. Buchanan was sentenced on the conspiracy count to 15 years imprisonment and on the trafficking count to 30 years, with the first 15 years in prison followed by 15 years probation.