908 F.2d 974
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Paul HILES (89-2238), Walter Turner (89-2383), Defendants-Appellants.
 Nos. 89-2238, 89-2383.
 United States Court of Appeals, Sixth Circuit.
 July 27, 1990.
 
 Before KEITH and NATHANIEL R. JONES, Circuit Judges, and ENGEL, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendants appeal their convictions pursuant to a guilty plea to possession with intent to distribute cocaine. For the following reasons, we affirm.
 
 I.
 
 2
 On July 25, 1988 David Kwong provided a sample of cocaine to a government cooperating witness (CW) in Chicago, Illinois. He also told the CW that he planned to travel to Detroit, Michigan. On July 26, 1988, Kwong completed the sale of two kilograms of cocaine for $44,000.00 in official government funds. He was observed boarding the Amtrak train destined for Detroit carrying two large suitcases. Surveillance agents also travelled to Detroit on that train. The agents described the two suitcases as one large brown soft sided nylon suitcase, and one large blue soft-sided nylon suitcase, slightly smaller. Kwong was observed struggling with the suitcases, which were apparently quite heavy.
 
 
 3
 Upon arrival in Detroit, Kwong checked into the Portchartrain Hotel at approximately 9:30 p.m. The next afternoon he sent the suit cases to the lobby via hotel porter. After 4 p.m. defendant Paul Hiles was observed picking up the suit cases and placing them in the trunk of a black Ford Tempo. Surveillance agents followed Hiles to 23750 Frisbee in Detroit. He there met defendant Walter Turner. After talking briefly, Hiles and Turner each carried a suitcase into Apt. 2 of 23750, the residence of Anjanette Jones. Jones gave Turner a set of keys so that Hiles and Turner could come and go at will.
 
 
 4
 Fifteen to twenty minutes after arrival, both Hiles and Turner left, carrying a small cardboard box. At 9:00 p.m., Turner returned to the apartment accompanied by two men. Turner and one of the men entered the apartment, where the other remained in the car with lights on and engine running. When an agent "buzzed" the door of the building, Turner opened the door of apartment number two and motioned the agents to leave. Shortly before 8:00 p.m., Paul Hiles was arrested in downtown Detroit. He advised agents that he was staying at the Omni Hotel and knew nothing of the apartment on Frisbee. Pursuant to a consent search of the hotel room, Hiles' luggage, clothing and personal items were recovered.
 
 
 5
 At approximately 10:00 p.m. Jones returned to her apartment and entered with her own keys. No one else was present. When she opened her bedroom closet she found two suit cases. Jones also found a set of scales and some wrappings that Turner and Hiles had left behind. Jones testified Hiles had asked her if a friend from out of town could stay overnight in her apartment, and that she had said yes. However, she testified she did not give Hiles or Turner permission to store anything in her apartment. Jones testified that prior to returning home, she'd called Turner through his beeper and asked if anyone was at her place and if it was ok to return home. She also testified that she had attempted to find another place to spend the night but was unsuccessful.
 
 
 6
 At 10:26 p.m. the search warrant was issued and shortly thereafter the FBI agents entered the apartment and seized the suitcases which contained more than twenty-two kilograms of cocaine.
 
 
 7
 Turner and Hiles filed motions to suppress the evidence, claiming that the affidavit supporting the search warrant (which at that time was under seal) contained intentionally false statements and lacked probable cause. Hiles also filed a motion to unseal the affidavit. The United States filed a response contesting the defendants' standing to challenge the search and requesting in camera review of the warrant to protect the identity of the CW. By March 20, the date of the evidentiary hearing, the identity of the CW was compromised in another unrelated drug investigation, which permitted the warrant to be unsealed.
 
 
 8
 The defendants, Paul Hiles and Walter Turner, each pled guilty to one count of unlawful possession with intent to distribute cocaine, in violation of 21 U.S.C. Sec. 841(a)(1). The guilty pleas were offered conditionally under F.R.Crim.P. 11(a)(2), with each defendant reserving the right to appeal the denial of their Motion to Suppress certain evidence obtained by a federal search warrant. The Honorable Anna Diggs Taylor, United States District Judge for the Eastern District of Michigan, sentenced defendant Hiles to a term of 144 months, to be followed by 60 months of supervised release. Defendant Turner was sentenced to 87 months, a $1,000 fine, and 60 months of supervised release. Both defendants bring this direct appeal.
 
 
 9
 The district court found that the defendants lacked standing to contest the search. The court then gave defendants seven days after receiving the affidavit and new discovery materials to challenge the warrant. No additional challenge was raised. After entering conditional guilty pleas reserving the right to appeal the denial of the motion to suppress, these direct appeals followed.
 
 II.
 
 10
 Turner and Hiles argue that the district court erred in ruling that they had no standing to challenge the search of Jones' apartment. They contend that they were given keys to the apartment, permission to bring belongings in, the right to exclude others, even Jones, as evidenced by her call to Turner asking if she could return to her home. The Supreme Court has established a two prong test for determining whether a criminal defendant has standing to challenge a search. First, a defendant must show that he manifested a subjective expectation of privacy in the object of the challenged search, and second he must show that society is prepared to recognize that expectation as legitimate. California v. Ciraolo, 476 U.S. 207, 211 (1986).
 
 
 11
 In Rakas v. Illinois, 439 U.S. 128 (1978), the Supreme Court overruled the automatic standing provision established in Jones v. U.S., 362 U.S. 257 (1969), but stated that "Jones not only had permission to use the apartment of his friend, but had a key to the apartment with which he admitted himself on the day of the search and kept possessions in the apartment. Except with respect to his friend, Jones had complete dominion and control over the apartment and could exclude others from it." Id. at 149. The court therefore stated that "Jones could legitimately expect privacy in the areas which were the subject of the search and seizure [he] sought to contest." Id.
 
 
 12
 In U.S. v. Sanginetto-Miranda, 859 F.2d 1501, 1510 (6th Cir.1988), this court held that defendant Betts met his burden of establishing a legitimate expectation of privacy in a third party's apartment. Betts had been given unrestricted access, and was permitted to stay overnight as often as he wanted without lessee's knowledge or consent. Betts kept clothes at the apartment and expected to exclude others when he locked the door from the inside. Because Betts was never restricted from using the residence, this court determined he was more than a casual visitor. Nelson, Bett's co-defendant, was found to have no expectation of privacy. Nelson did not have a key, but was permitted to enter by Betts. Though Nelson claimed he was going to spend the night in the third party's apartment, and had even brought a shirt and pants, the court found it not credible that Nelson intended to spend the night when all of his luggage was still at Betts's apartment. "[T]here was no indication that Nelson had a right to exclude others from the apartment, nor was there any evidence that he took precautions to insure his privacy in any area of the apartment.... At best, the record indicates that Nelson was only a casual visitor." Id.
 
 
 13
 Recently, in Minnesota v. Olson, 110 S.Ct. 1684 (1990), the Supreme Court held that a defendant who was an overnight guest had a legitimate expectation of privacy which was protected by the Fourth Amendment and therefore had standing to challenge a warrantless entry to effect his arrest. The court stated that all citizens share the expectation that hosts are more likely than not to respect a guest's privacy interests, even if the guest has no legal interest in the premises and does not have authority to determine who can enter the household. Id. at 1689. Olson had been a guest for several days, and had slept in the home where he was arrested, and was found hiding in a closet. He also had a change of clothes in the home at the time of his arrest. Id. at 1688 n. 6.
 
 
 14
 Turning to the instant case, the district court found that neither Turner nor Hiles had a legitimate expectation of privacy in Jones' apartment and were at best casual visitors. The court stated:
 
 
 15
 It appears to the Court that for all the reasons argued by Mr. Pratt, the defendants are without standing to challenge the propriety of the search that was conducted on the premises on Frisbee. The Court does not find that they had any subjective expectation of privacy which society is prepared to recognize as legitimate, in the words of the case law.
 
 
 16
 The Court refers to the Sanginetto-Miranda case and finds that both of the defendants in the case at bar fall within the category of a casual visitor to the apartment rather than that of the frequent visitor of Miranda.
 
 
 17
 It's true that they were given the keys to Ms. Jones's apartment and were given full access for the duration of Mr. Hiles' visit to the city to come back and forth apparently to the apartment, and it's true that while present in the apartment apparently, according to Ms. Jones' testimony, were permitted to exercise a degree of control over the premises, but at the time of the search they were absolutely without control. They had no more than access to the apartment. They had no dominion or control or expectation of privacy.
 
 
 18
 The 2 suitcases here in question were placed in a clothes closet of the lessee of the premises, Ms. Jones, her clothes closet. There could be absolutely no expectation whatsoever that these suitcases were not where she would come upon them or that the door would remain closed, as it did not. Indeed, they took the risk that she could have become suspicious, called her entire neighborhood to look through the contents of the suitcases, or called law enforcement authorities about placing them in another person's clothes closet and going away. Even though one has keys to return when one has absolutely no residency rights in the apartment, no record of expecting the privilege of staying there or being treated as a private person there certainly gives no expectation of privacy.
 
 
 19
 For all of the factors argued by the government here, the Court finds that there is no standing in these defendants to challenge the search of Ms. Jones' apartment, the seizure and the search of the suitcases in her clothes closet which were free for her to find, or for any other guest of hers to find, open and examine them while the defendants were away from the premises.
 
 
 20
 J.App. 133-135. Neither Turner nor Hiles had the kind of unrestricted use of the apartment that defendant Betts enjoyed. Neither had ever spent the night, nor was it credible that Hiles would spend the night after having taken a room at the Omni Hotel. Though Turner had keys for the occasion of Hiles visit, he'd known Jones for a year and had never been given keys before. In fact, he only used the keys once to gain access to the apartment. While it is true that Turner exercised dominion over the apartment in Jones' absence that evening, he could not have excluded Jones or her guests if she permitted their entry. Also, even though Hiles and Turner put their suitcases in the closet and closed the door, the district court correctly noted that this did not insure privacy because Jones was free to open them and show the contents to the world in their absence. Thus, the appellants' expectation of privacy was at best quite limited.
 
 
 21
 Several key factors distinguish the instant case from Rakas, and Sanginetto-Miranda. First, whatever dominion or control Turner and Hiles had over the apartment was for a very limited time. Second, this limited dominion was given to them under false pretenses since it was not credible that Hiles intended to stay overnight. Third, Turner and Hiles had no right to exclude others while not on the premises themselves. Finally, unlike the defendant in Minnesota v. Olson, neither Hiles nor Turner were overnight guests, neither was arrested on the premises, nor were they present in the apartment at the time of the search, which took place upon the issuance of a warrant. For these reasons, we find that the district court correctly determined Turner and Hiles did not have standing to challenge the search.
 
 III.
 
 22
 Accordingly, the judgment of the district is AFFIRMED.